UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER JULIAN, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>TTE TECHNOLOGY, INC.,<br><br>        Defendant. | Case No. 20-cv-02857-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 27 |

Plaintiffs Christopher Julian, Mark Pacan, Paul Fiskratti, and Wayne Lewald (hereinafter, "Plaintiffs") have filed a class action against TTE Technology, Inc. dba TCL North America (hereafter, "Defendant"), asserting that Defendant has engaged in false advertising with respect to its televisions.  Currently pending before the Court is Defendant's motion to dismiss the first amended complaint ("FAC").  Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part Defendant's motion.

**I.    FACTUAL & PROCEDURAL BACKGROUND**

In their complaint, Plaintiffs allege as follows.

Defendant sells televisions throughout the United States through numerous retailers such as Amazon, Best Buy, Target, and Walmart.  FAC ¶¶ 9-10.  Consumer demand for televisions, including those sold by Defendant, "is affected by the technical specifications of [the] televisions."  FAC ¶ 13.  One critical technical specification is the hertz ("Hz") measurement.  The Hz measurement is an industry standard specification related to a television's refresh rate.  FAC ¶ 17. Refresh rate refers to the frequency at which new image data can be displayed on a panel per

second.  FAC ¶¶ 16, 21.  If the image data can be updated 60 times per second, the refresh rate is 60 Hz; if the image data can be updated 120 times per second, the refresh rate is 120 Hz.  FAC ¶ 20.  The higher the refresh rate, the greater the benefit is to the television viewer – *e.g.*, motion blur is greatly reduced.[1]  FAC ¶¶ 22-23.  However, the higher the refresh rate, the more expensive the television is (*i.e.*, because more advanced technology and high-end materials capable of implementing the technology are required).  FAC ¶ 24.

Defendant sells televisions with a 60 Hz refresh rate.  FAC ¶¶ 36, 38.  The televisions include a technology known as backlight scanning that is designed to reduce motion blur.  FAC ¶ 35.  Backlight scanning does not reduce motion blur by increasing the frequency at which new image data is displayed (*i.e.*, by increasing the refresh rate); rather, backlight scanning involves turning the backlight of a television on or off during the time a single image is presented.  FAC ¶ 26.  A 60 Hz television with backlight scanning is not as expensive as a 120 Hz television is, but according to the complaint, it does not address motion blur as effectively as a 120 Hz television does.  FAC ¶¶ 26-29.  In other words, the picture quality of Defendant's 60 Hz televisions with backlight scanning is visibly poorer than a television with a true 120 Hz refresh rate.  FAC ¶¶ 58, 64, 75.

Defendant markets its 60 Hz televisions with backlight scanning as having a "120 Hz CMI effective refresh rate."  FAC ¶ 37.  According to Plaintiffs, by advertising its televisions in this way, Defendant has misled consumers, including but not limited to Plaintiffs.  FAC ¶¶ 43, 56, 63, 68, 73.  Plaintiffs purchased Defendant's televisions relying on the "120 Hz CMI effective refresh rate" label.  FAC ¶¶ 56, 63, 68, 73.

Based on, *inter alia*, the above allegations, Plaintiffs have asserted the following claims for relief:

(1) Unfair competition in violation of California Business & Professions Code § 17200;

---

[1] Defendant suggests that, in the FAC, Plaintiffs make allegations related to refresh rate (in particular, pixels) that are inconsistent with their original complaint.  The Court does not agree.  The FAC simply adds more details about refresh rate.

2

    (2) false advertising in violation of California Business & Professions Code § 17200;

    (3) false advertising in violation of California False Advertising Law § 17500;

    (4) false advertising in violation of the California Consumer Legal Remedies Act § 1750;

    (5) unjust enrichment under California law;

    (6) violation of the New Jersey Consumer Fraud Act §56:8-1; and

    (7) unjust enrichment under New Jersey law.

Plaintiffs seek to certify a nationwide class but, in the alternative, ask for certification of a California class and a New Jersey class. FAC ¶ 76.

## II.     DISCUSSION

A.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

Plaintiffs allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

Where a fraud-based claim is at issue, a plaintiff must meet a heightened pleading standard. More specifically, pursuant to Federal Rule of Civil Procedure 9(b), a plaintiff must state with particularity the circumstances constituting fraud – *i.e.*, "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).

B.   All Causes of Action

All of the claims asserted by Plaintiffs, whether based on California or New Jersey law, are premised on Defendant's advertising of its 60 Hz televisions with backlight scanning as having a "120 Hz CMI effective refresh rate." According to Plaintiffs, this was false or misleading advertising because Defendant was selling only 60 Hz televisions, not 120 Hz televisions. In response, Defendant argues that all claims should be dismissed because a reasonable consumer would not be misled by the "120 Hz CMI effective refresh rate" label. *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011) (noting that a reasonable consumer standard is used for the following California claims: § 17200, § 17500, and CLRA); *In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, No. 08–939 (DRD), 2009 WL 2940081, at *10 (D.N.J. Sept. 11, 2009) (dismissing a NJCFA claim where the plaintiffs failed to plausibly allege that an ordinary consumer would interpret the statement the way the plaintiffs did). Defendant maintains that a reasonable consumer would not believe that she was buying a 120 Hz television because there was qualifying language – "CMI effective refresh rate" – as part of the label. *E.g.*, *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (noting that, to determine whether a reasonable consumer is likely to be deceived, an allegedly false statement must be read in the context of the entire advertisement); *Koehler v. Litehouse, Inc.*, No. CV 12–04055 SI, 2012 WL 6217635, at *3 (N.D.

4

Cal. Dec. 13, 2012) (finding that qualifying statements are important in determining a consumer's understanding in false advertising claims).

For purposes of this order, the Court need only decide whether it is plausible that "'a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (applying California law).[2] The Court finds that it is plausible. Defendant is correct that "effective" is an important qualifying word. However, reasonable consumers might well think that a television with a "120 Hz CMI effective refresh rate" is a television that, *e.g.*, has a refresh rate that is *close* to, but not exactly, 120 Hz. This would be false because the television actually has a refresh rate of 60 Hz only.[3]

Alternatively, even if – as Defendant suggests – reasonable consumers would understand from the label that they are not purchasing 120 Hz televisions and are instead simply purchasing televisions that *function* like a 120 Hz television, they could still be misled if the purchased televisions end up delivering a visibly poorer picture quality compared to a true 120 Hz television.

---

[2] Although New Jersey law is not exactly the same as California law, for purposes of the pending motion, there is no practical difference. *See Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 98 (D.N.J. 2011) (stating that, "[t]o constitute consumer fraud [under the New Jersey Consumer Fraud Act], the business practice in question must be misleading and stand outside the norm of reasonable business practice in that it will victimize the average consumer"); *New Jersey Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 13 (N.J. Super. Ct. App. Div. 2003) (same); *see also Hoffman v. Nordic Naturals, Inc.*, No. 14-3291 (SDW)(SCM), 2015 WL 179539, at *5 (D.N.J. Jan. 14, 2015) (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 607 (1997)) (noting that, for a claim brought under the NJCFA, a misrepresentation must be a material statement of fact, found to be false, and made to induce the buyer to make the purchase); *Miller v. Bank of Am. Home Loan Serv'g, L.P.*, 439 N.J. Super. 540, 553 (N.J. Super. Ct. App. Div. 2015) (finding that the plaintiffs' NJCFA claim failed because they failed to detail material misrepresentations they reasonably relied upon or allege facts showing a business practice to materially conceal information that induced them to act).

[3] In their papers, Defendant asserts that Plaintiffs could not have been misled because they purchased their televisions through Best Buy, Amazon, and Wal-Mart's websites, which included information that Defendant's televisions were only 60 Hz televisions. These websites, however, are not judicially noticeable. *See* Fed. R. Evid. 201(b) (providing that a "court may judicially noticeable a fact that is not subject to reasonable dispute because it [*e.g.*] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). Moreover, even if the Court could take judicial notice of the websites, Defendant assumes that Plaintiffs read everything on the websites, but, at this juncture of the proceedings, all reasonable inferences are made in Plaintiffs' favor; thus, the Court cannot infer that Plaintiffs saw information about Defendant's television having only a 60 Hz measurement.

1  Plaintiffs have alleged that Defendant's televisions do have a visibly poorer picture quality, and
2  therefore there is a question of fact that cannot be resolved at this early stage of the proceedings.

3  C. <u>California Claims: Section 17200, Section 17500, CLRA, and Unjust Enrichment</u>

4  Because the Court rejects Defendant's argument above, most of Defendant's challenges to Plaintiffs' § 17200 claim are moot. *See* Mot. at 14-15 (arguing that, if Plaintiffs fail to allege an unlawful or deceptive business practice, then they cannot have a claim for an unfair business practice either; also arguing that Plaintiffs have failed to specify how Defendant engaged in unfair conduct).

The only argument that the Court need address is the contention that the § 17200 claim – as well as the other California claims (*i.e.*, the § 17500, CLRA, and unjust enrichment claims) – should be dismissed to the extent they seek equitable relief because "[a] plaintiff is not entitled to pursue equitable relief if an adequate remedy at law may exist." Mot. at 15-16.

As an initial matter, the Court notes that equitable relief can come in different forms – for example, injunctive relief or restitution. For the reasons discussed below, Plaintiffs have failed to plead a claim for injunctive relief; therefore, here, the Court focuses on restitution only. In *Sonner v. Premier Nutrition Corp.*, 971 F.3d. 834 (9th Cir. 2020), the Ninth Circuit held that a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." *Id.* at 844. Notably, the court pointed out that the plaintiff in *Sonner* sought "the same sum in equitable restitution as 'a full refund of the purchase price' . . . as she requested in damages to compensate her for the same past harm. Sonner fails to explain how the same amount of money for the exact same harm is inadequate or incomplete . . . ."[4] *Id.*

Plaintiffs argue that *Sonner* should be given little consideration because, there, "the parties "had already gone through discovery and expert reports on remedies and were heading to trial,"

---

[4] District courts before *Sonner* also made similar rulings. *Rhynes v. Stryker Corp.*, No. 10–5619 SC, 2011 WL 2149095, at *3-4 (N.D. Cal. May 31, 2011) (dismissing plaintiff's UCL claim because the compensatory damages she sought provided her with an adequate remedy at law to redress her alleged injuries); *Duttweiler v. Triumph Motorcycles (America) Ltd.*, No. 14-cv-04809-HSG, 2015 WL 4941780, at *8-9 (N.D. Cal. Aug. 19, 2015) (dismissing UCL and FAL claims because plaintiff failed to sufficiently allege facts suggesting damages under the CLRA alone would not provide adequate relief).

6

1    Opp'n at 14-15; in contrast, here, the case is only at the pleading stage. Thus, Plaintiffs argue that
2    Defendant's argument is premature and ignores that a plaintiff should typically be allowed to
3    plead alternative remedies. Plaintiffs also speculate that restitution might afford them remedies
4    that they could not recover as damages, particularly if Defendant is required to disgorge profits
5    under a restitutionary remedy.
6        None of these arguments is persuasive. First, courts have entertained arguments such as
7    Defendant's even at the 12(b)(6) phase. *Duttweiler*, 2015 WL 4941780, at *9 (noting that courts
8    routinely dismiss UCL claims at the pleading stage due to plaintiff's failure to sufficiently allege
9    facts suggesting an entitlement to equitable relief). Second, it is not an unfair burden to require
10   Plaintiffs to explain *why* legal remedies are inadequate in their pleading. *Gibson v. Jaguar Land*
11   *Rover North America, LLC*, No. CV 20-00769-CJC(GJSx), 2020 WL 5492990, at *3 (C.D. Cal.
12   Sept. 9, 2020) (stating that "courts generally require plaintiffs seeking equitable relief to allege
13   some facts suggesting that damages are insufficient to make them whole"). Here, Plaintiffs have
14   failed to explain how restitution could be different from damages. Plaintiffs have simply
15   speculated that restitution and damages could be different (*e.g.*, as to disgorgement) – but even
16   that speculation is questionable given that any profits subject to disgorgement under § 17200
17   would be limited. *See S. Cal. Water Co. v. Aerojet-General Corp.*, No. CV 02-6340 ABC (RCx),
18   2003 U.S. Dist. LEXIS 26534, at *44 (C.D. Cal. Apr. 1, 2003) (noting that "§ 17200 does not
19   provide a remedy of *nonrestitutionary* disgorgement"; "[u]nder § 17200, restitution is limited to
20   disgorgement of (1) money or property once in the plaintiff's possession and (2) money in which
21   the plaintiff has a vested interest").
22       Finally, on the face of the complaint, it appears that what Plaintiffs' claim for damages and
23   restitution are not really different. The FAC asserts Plaintiffs have been damaged because they
24   "would have paid significantly less for [the televisions]" had they known the truth – or that they
25   would not have purchased the televisions at all. FAC ¶ 120. The first measure is the same as what
26   may be obtained as restitution. *See Brazil v. Dole Packaged Foods*, LLC, 12-cv-01831-LHK,
27   2014 WL 5794873, at *5 (N.D. Cal. Nov. 6, 2014 (stating that "[t]he proper measure of restitution
28   in a mislabeling case is the amount necessary to compensate the purchaser for the difference

between a product as labeled and the product as received"). As for the second measure, some courts have held that a full refund of the purchase price is not even available as restitution, *see Victor v. R.C. Bigelow, Inc.*, 2015 WL 5672577, at *1 (N.D. Cal. Aug. 12, 2015) (stating that "[t]he law is clear in this District that '[t]he proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received, not the full purchase price or all profits'").

Accordingly, Plaintiffs have not demonstrated how they could get *more* under a damages theory than they would under an equitable remedy. The Court dismisses the § 17200, § 17500, CLRA, and unjust enrichment claims to the extent they seek equitable relief because Plaintiffs have not demonstrated the inadequacy of a legal remedy. The dismissal, however, is without prejudice such that, should Plaintiffs uncover during discovery a basis for claiming that legal remedies do not provide for adequate relief, they may seek to amend.

D.  <u>New Jersey Consumer Fraud Act Claim</u>

Under the New Jersey Consumer Fraud Act (NJCFA), a plaintiff must allege (1) an unlawful practice by the defendants; (2) an ascertainable loss by plaintiff; and (3) a causal nexus between the first two elements-defendants' allegedly unlawful behavior and the plaintiff's ascertainable loss. *Parker v. Howmedica Osteonics Corp.*, No. 07–02400 (JLL), 2008 WL 141628, at *2 (D.N.J. Jan. 14, 2008) (citing *New Jersey Citizen Action v. Schering–Plough Corp.*, 367 N.J. Super. 8, 13 (2003)). In the instant case, Defendant challenges Plaintiffs' allegations on ascertainable loss. Mot. at 18-20.

Generally, a plaintiff can allege an ascertainable loss occurred by claiming she received less than what was promised. *Union Ink Co., Inc. v. AT&T Corp.*, 801 A.2d 361, 379 (N.J. Super. Ct. App. Div. 2002). Thus, "[i]n a misrepresentation case, a plaintiff may show ascertainable loss by either out-of-pocket loss or a demonstration of loss in value." *Green v. Green Mountain Coffee Rosters, Inc.*, 279 F.R.D. 275, 281 (D.N.J. 2011). Although a plaintiff must be able to quantify or measure what loss she has suffered or will suffer as a result of the unlawful conduct, *Perkins v. Daimler Chrysler Corp.*, 383 N.J. Super. 99, 106 (N.J. Super. Ct. App. Div. 2006), a plaintiff's obligation to provide admissible evidence of diminution in value does not arise at the motion to

8

dismiss stage where there has not been an opportunity for expert evidence to speak to loss in value of property. *See Perkins v. Daimler Chrysler Corp.*, 383 N.J. Super. 99, 111 (N.J. Super. Ct. App. Div. 2006); *see also Thiedemann v. Mercedes-Benz*, USA, LLC, 183 N.J. 234, 245 (N.J. 2005) ("We can envision the possibility that an expert may be able to speak to a loss in value of real or personal property due to market conditions, with sufficient precision to withstand a motion for summary judgment"). At the pleading stage, it is enough for a plaintiff to allege that she would not have paid as much for a product if she had known the truth behind the advertisements or statements used to sell the product. *See, e.g.*, *Harnish v. Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641, 652-53 (D.N.J. 2013) (finding that the plaintiffs' assertions that they would not have paid the amount in tuition they paid had they been aware of the law school's true job placement rate and salary statistics were sufficient to meet the NJCFA's broad standard for ascertainable loss).

Here, Plaintiffs have alleged that refresh rates are directly related to the amount of money retailers and manufacturers charge, that Plaintiffs did not receive the refresh rate they bargained for, and that Plaintiffs therefore paid more for their televisions than they would have paid had Defendant's representations been truthful. Thus, consistent with *Harnish*, Plaintiffs have sufficiently pled an ascertainable loss under the NJCFA at the motion to dismiss stage.

E.  New Jersey Unjust Enrichment Claim

Defendant argues that the New Jersey unjust enrichment claim fails because the two New Jersey plaintiffs purchased their televisions from Walmart, and, under New Jersey law, a plaintiff is barred from suing a manufacturer (such as Defendant) if the plaintiff purchased the product from a retailer. In support of this argument, Defendant cites several New Jersey district court decisions. *Weske v. Samsung Electronics Am., Inc.*, No. 2:10-4811 (WJM), 2012 WL 833003, at *7 (D.N.J. Mar. 12, 2012); *Fishman v. Gen. Elec. Co.*, No. 2:12-cv-00585 (WJM), 2013 WL 1845615, at *6 (D.N.J. Apr. 30, 2013); *Cooper v. Samsung Electronics Am., Inc.*, No. 07-3853 (JLL), 2008 WL 4513924, at *10 (D.N.J. Sept. 30, 2008), *aff'd*, 374 F. App'x 250 (3d Cir. 2010). However, these decisions are not as instructive as two New Jersey state court decisions, *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105 (N.J. 1966), and *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539 (1994).

1    In *Callano*, Bruce Pendergrast entered into a contract with a housing developer for the sale
2    of a home to be constructed. *Callano*, 91 N.J. Super. at 107-08. Pendergrast also entered into a
3    contract with the owner of a plant nursery for the planting of shrubbery at the house but
4    Pendergrast passed away before he paid the plant nursery owner. *Id.* The housing developer and
5    Pendergrast's estate cancelled the original contract for the sale of the home and subsequently sold
6    the home with the newly planted shrubbery to another buyer. *Id.* The housing developer did not
7    know that the nursery plant owner was not paid for the shrubbery contract. *Id.* at 107. The court
8    found that the housing developer was not liable for unjust enrichment because the nursery plant
9    owner contracted with and expected payment to be made by Pendergrast and had no dealings with
10   the housing developer. *Id.* at 109-110. The court explained that recovery for unjust enrichment
11   was permitted against non-contracting parties in a different case because the fraud was perpetrated
12   by the non-contracting defendants. *Id.* at 110. In *Callano*, the developer was unaware the nurse
13   plant owner was not paid by Pendergrast and did not engage in any fraud or conduct which
14   justified recovery against it. *Id.*

15   In *VRG*, a real estate broker entered into an exclusive agreement with Golden Reef, an
16   owner of a commercial shopping center, to find tenants for a shopping center. *Id.* at 543. The
17   broker was entitled to 6% of each monthly rental payment received from the tenants. *Id.* at 544.
18   Golden Reef subsequently contracted with GKN Realty for the sale of the shopping center. Under
19   the broker's contract, the broker was entitled to monthly rental commissions even if the shopping
20   center was sold. However, Golden Reef failed to tender the payment for the commission to the
21   broker when the shopping center was sold. *Id.* at 544-45. The broker brought suit against Golden
22   Reef and GKN for an equitable lien on the monthly rental income of the shopping center. *Id.* at
23   543-44. The court found that Golden Reef was the only unjustly enriched party because it was
24   able to sell the shopping center for $9.8 million, the center's fair market value which was
25   enhanced by the fact that the property was rented and generating rental income. *Id.* at 554-55.
26   However, the broker was not entitled to an equitable lien against GKN because GKN paid the fair
27   market value for the shopping center, did not receive an unexpected benefit, and did not otherwise
28   engage in wrongful conduct justifying recovery against it. *Id.*

In *Stewart v. Beam Glob. Spirits & Wine, Inc.*, 877 F. Supp. 2d 192 (D.N.J. 2012), the federal district court relied on *Callano* and *VRG* to deny a claim for unjust enrichment in a false advertising case. *Id*. at 199-201. The court recognized that some courts had precluded unjust enrichment claims based on the lack of a direct relationship between the plaintiff and the defendant; however, it concluded that the requirement of a direct relationship was simply intended to preclude a plaintiff from seeking recovery from a defendant far removed from the wrongdoing. *Id*. at 200. The court reasoned that the direct relationship requirement only protects innocent third-parties (*i.e.*, far-removed defendants) and that defendants engaging in false marketing campaigns designed to deceive consumers were not innocent third-parties and thus had sufficiently direct relationships with consumers. *Id*. Since the plaintiffs in *Stewart* alleged they purchased defendants' products and defendants received money in a transaction that otherwise would not have occurred but for the defendants' allegedly fraudulent conduct, the court found that the plaintiffs sufficiently pled a claim for unjust enrichment. *Id*. at 201-02.

*Stewart* is persuasive. *Equiom (Isle of Man) Limited v. Jacobs*, No. 16-4362 (CCC-JBC), 2017 WL 6550481, at *5 (D.N.J. Dec. 22, 2017) (finding the *Stewart* court's reasoning persuasive); *Morcom v. LG Electronics USA, Inc.*, No. 16-cv-4833, 2017 WL 8784836, *10 (D.N.J. Nov. 30, 2017) (same). Accordingly, the Court concludes that the fact that Plaintiffs did not directly purchase their televisions from Defendant does not automatically bar their claim for unjust enrichment. Rather, the critical issue is whether Defendant can plausibly be deemed a wrongdoer. Here, Plaintiffs have alleged that Defendant – like the defendant in *Stewart* – was engaged in false advertising that was ultimately directed to consumers like Plaintiffs. There is therefore a plausible basis to hold Defendant liable.

That being said, Defendant does make one argument that weighs against Plaintiffs. More specifically, Defendant argues that, under New Jersey unjust enrichment law, a plaintiff is not entitled to pursue equitable relief if an adequate remedy at law may exist. Mot. at 20 (citing *Nat'l Amusements, Inc. v. N.J. Tpk. Auth.*, 261 N.J. Super. 468, 478, (Law. Div. 1992), *aff'd*, 275 N.J. Super. 134 (App. Div. 1994) (stating that "[r]estitution for unjust enrichment is an equitable remedy, available only when there is no adequate remedy at law")). Plaintiffs argue that nothing

11

1    prevents them from pleading both equitable relief through unjust enrichment and legal remedies

2    under the NJCFA.  Opp'n at 21 (citing *In re K-Dur Antitrust Litig.*, 338 F. Supp.2d 517, 544

3    (D.N.J. 2004) (finding, in a New Jersey unjust enrichment case, that plaintiffs were permitted to

4    plead alternative theories of recovery)).  For the reasons stated above, Plaintiffs' claim for

5    equitable relief is problematic.  The Court dismisses Plaintiffs' New Jersey unjust enrichment

6    claim for failure to demonstrate that their remedies at law are inadequate.  But, consistent with the

7    above, the unjust enrichment claims are dismissed without prejudice in the event Plaintiffs

8    uncover during discovery a basis for claiming that legal remedies are inadequate.

F.    <u>Injunctive Relief</u>

To the extent Plaintiffs seek injunctive relief for any cause of action, Defendant contends that Plaintiffs lack standing.  A plaintiff is required to show injury-in-fact, causation, and redressability in order to obtain Article III standing.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Where a plaintiff seeks injunctive relief, she must make a reasonable showing that she will again be subjected to the alleged wrongdoing.  *Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983).  Although one could argue that, in a false advertising case, a plaintiff can never have standing for injunctive relief because the plaintiff now knows the truth and thus cannot be deceived again, the Ninth Circuit has rejected that argument.

> Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future.  In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to.  In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved. Either way, we share [the] sentiment that we are "not persuaded that injunctive relief is *never* available for a consumer who learns after purchasing a product that the label is false."

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 96-70 (9th Cir. 2018) (emphasis in original).

Although *Davidson* thus gives a plaintiff in a mislabeling case the opportunity to seek injunctive relief, the plaintiff is still required to allege that she would like to purchase the defendant's product in the future.  In the instant case, the Court agrees with Defendant that

1  Plaintiffs have failed to allege a claim for injunctive relief because they have not expressed an

2  intent to purchase Defendant's television again in the future. Nowhere in the FAC do Plaintiffs

3  allege that they may be interested in purchasing or would purchase Defendant's televisions in the

4  future. Without Plaintiffs' intent or desire to purchase the televisions, Plaintiffs fail to allege how

5  they would be exposed to any future injury.

6  The Court therefore dismisses Plaintiffs' claim for injunctive relief but gives Plaintiffs

7  leave to amend to correct this deficiency.

8  G.    Nationwide Class

9  Finally, Defendant argues that, to the extent any claims for relief survive its 12(b)(6)

10 motion to dismiss, Plaintiffs cannot proceed as a nationwide class. Mot. at 22. Plaintiffs seek

11 certification as a nationwide class for their California claims, arguing that California law can apply

12 to all class members nationwide. FAC ¶ 76. If the Court denies nationwide certification,

13 Plaintiffs move in the alternative for certification of a California class on the California claims and

14 a New Jersey class on the New Jersey claims. *Id.*

15 Defendant argues that, under *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir.

16 2012), California law cannot apply to the putative nationwide class; instead the Court must apply

17 the laws of the jurisdiction in which each transaction took place. Mot. at 22. In *Mazza*, the

18 plaintiffs sued Honda, asserting that Honda's advertisements misrepresented the characteristics of

19 certain braking systems equipped on its cars and omitted information on the braking system's

20 limitations. *Id.* at 585. Honda's advertisements included a product brochure, television

21 commercials, print advertisements in magazines, videos available at kiosks at dealerships, and

22 videos on a website. *Id.* at 586-87. Plaintiffs' claims were all brought pursuant to California law,

23 including § 17200, § 17500, CLRA, and unjust enrichment. *Id.* at 587. The district court certified

24 a nationwide class under California consumer protection and unjust enrichment laws. *Id.*

25 On appeal, the Ninth Circuit reversed the district court's class certification. *Id.* at 590. It

26 noted that, under California's choice-of-law rules, the plaintiffs first had to show that California

27 has significant contact or aggregation of contacts to the claims of each class member. *Id.* at 590.

28 The Ninth held that there were significant California contacts to the claims of each class member

13

because Honda's corporate headquarters, the advertising agency that allegedly produced the misrepresentations, and one-fifth of the proposed class members were in California. *Id.*

As the plaintiffs made this showing, the burden shifted to Honda to show that foreign law should apply instead of California law. *Id.* California law could only apply to a nationwide class if the interests of the other states were not found to outweigh California's interest in having its law applied. *Id.* at 590. To determine whether the interests of other states outweighed California's interest, the court applied a three-step governmental interest test asking the following: (1) whether the relevant law of each affected jurisdiction is materially different regarding the particular issue in question; (2) if so, whether there would be a true conflict in each jurisdiction's interest in the application of its own law; and (3) if there is a true conflict, which state's interest would be more impaired if its policy were subordinated to the policy of another state. *Id.* The law of the state whose interest would be more impaired if its law were not applied governs. *Id.*

At step one, Honda identified several material differences in the laws of each affected jurisdiction. *Id.* at 590-92. California's consumer protection statutes required scienter while many other states had a scienter requirement, which differs from other states that required only knowledge or reckless disregard. *Id.* at 590-91. Additionally, California required named class plaintiffs to demonstrate reliance, while some other states' consumer protection statutes did not. *Id.* at 590. Finally, there were material differences in the remedies given by state laws. *Id.* The court found that the scienter and reliance differences were material because they could spell the difference between the success and failure of a claim. *Id.* Therefore, the court moved on to the second step of the three-step governmental interest test. *Id.*

At step two, each state had an interest in the application of its own laws to its resident such that the application of California law would create a conflict. *Id.* at 591-92. The automobile sales at issue occurred in forty-four different jurisdictions, and each state had a strong interest in applying its own laws to those transactions. *Id.* at 592. The fact that California law would potentially provide more protection for consumers was not dispositive of the issue because other states had a valid interest in shielding businesses from what the state might consider excessive litigation. *Id.* Each state had a valid interest in setting the appropriate level of liability in its

14

territory through policies set by the legislature in order to balance consumer protection with business welfare. *Id.*

At step three, California's attenuated interest in applying its laws to residents of other states would not be more impaired than other states' compelling interest in protecting its resident consumers and businesses. *Mazza* repeatedly noted that foreign states have a strong interest in applying their laws to protect both residents and businesses within the states' boundaries. For example, the court noted "Each of our states also has an interest in being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future." *Id.* at 593. If California law were applied to the entire nationwide class, foreign states would have been impaired in their ability to calibrate liability to foster commerce. *Id.* California recognizes that the place of wrong has the predominant interest in regulating conduct within its borders and considers the place of the wrong to be the state where the last event necessary to make the actor liable occurred. *Id.* For much of the class, the place of the wrong was in foreign states as that was where communication of the advertisements and reliance thereon in purchasing vehicles occurred. *Id.* at 594. Even though California had an interest in regulating businesses within its state boundaries, applying California law to acts that took place in other states was not necessary to achieve that interest. *Id.* at 594. Therefore, the court held that each class member's claim should have been governed by the laws of the jurisdiction where the transaction took place. *Id.*

In *Larsen v. Vizio*, No. SACV 14-01865-CJC (JCGx), 2015 WL 13655757 (C.D. Cal. Apr. 21, 2015) – a case that has facts similar to those in the instant case – a district court relied on *Mazza*, refused to apply California law to a nationwide class. The *Larsen* plaintiff filed a class action against Vizio, alleging that it misrepresented its televisions' refresh rates as being 120 Hz when the televisions actually displayed only 60 Hz, thus misleading the plaintiff into purchasing the television. *Id.* at *1. The plaintiff brought UCL, FAL, and CLRA causes of action on behalf of a nationwide class. *Id.* The court applied the three-part governmental interest test described above and concluded that the plaintiff's California UCL, FAL, and CLRA claims could not be

15

brought on behalf of a nationwide class because the interests of other states outweighed California's interest in having its law applied. *Id*. at 2.

In light of *Mazza* and *Larsen*, the Court concludes that Plaintiffs cannot assert a nationwide class for their California claims. Defendant has shown how the laws of California differ materially from the laws of other jurisdictions with respect to fraud-based claims. Mot. at 22-24; Wolf Decl., Ex. G (chart). In addition, each jurisdiction has an interest in having its own laws apply. Finally, California has a minimal interest in having its laws apply to out-of-state residents, particularly as California considers the place of the wrong to be the state where the last event necessary to make the actor liable occurred. Accordingly, the Court dismisses the nationwide class allegations, which leaves Plaintiffs with their alternative theory that California law should apply to a California class and New Jersey law to a New Jersey class.

In so ruling, the Court acknowledges Plaintiffs' contention that the Court should defer ruling on Defendant's argument – *i.e.*, that it is premature to decide the issue at 12(b)(6) when no discovery has been conducted. Opp'n at 22-23. But Plaintiffs have failed to show how discovery may change the outcome, and courts have in many instances addressed similar arguments at the 12(b)(6) phase. *Frezza v. Google Inc*., No. 12-cv-00237-RMW, 2013 WL 1736788, at *7 (N.D. Cal. Apr. 22, 2013) (noting that courts that have considered whether discovery is required to confirm material differences in the laws between states and have decided against deferring the choice of law decision until after discovery); *Route v. Mead Johnson Nutrition Co.*, 2013 WL 658251, *8-9 (C.D. Cal. Feb. 21, 2013) (rejecting plaintiff's request to defer ruling on a choice of law issue until the class certification stage because the matter was sufficiently obvious from the pleadings); *see, e.g., Rikos v. Procter & Gamble Co.*, 2012 WL 641946, *5 (S.D. Ohio Feb.2 8, 2012) (rejecting a discovery request on this issue and noting that the choice of law analysis is a largely legal determination).

The Court also recognizes Plaintiffs' argument – made for the first time at the hearing – that there is no real conflict of laws because it is possible for each consumer misled by Defendant's conduct to have two viable claims for relief: (1) one claim under the laws of their home jurisdictions (as recognized in *Mazza*) and (2) a second claim under the laws of California,

1    where Defendant is located; thus, applying California law to a nationwide class would not infringe
2    on other states' rights or prejudice class members.  But this argument is unpersuasive because it is
3    antithetical to the concept of choice of law which requires the Court to choose the applicable law.
4    The very purpose of choice-of-law rules is to pick a jurisdiction whose laws will substantively
5    govern.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187, *amended* 273 F.3d 1266 (9th
6    Cir. 2001) (noting that a federal court sitting in diversity must look to the forum state's choice-of-
7    law rules to determine the controlling substantive law).  Furthermore, Plaintiffs' theory is
8    inconsistent with the structure of *Mazza*'s analysis.  Plaintiffs have cited no authority authorizing a
9    party to bring, *e.g.*, an unjust enrichment claim under California law and a separate unjust
10   enrichment claim under Georgia law based on the same underlying facts.

11        Plaintiffs' theory is also inconsistent with the binding nature of class certification.  If a
12   nationwide class were certified on California claims and the case reached a final judgment, then
13   unnamed class members would be bound by the litigation; they could not further pursue their
14   claims under the laws of their home states.  *See Thorogood v. Sears, Roebuck and Co.*, 678 F.3d
15   546 (7th Cir. 2012) (noting that, "in a class action, a person not named as a party may be bound by
16   a judgment on the merits of the action, if she was adequately represented by a party who actively
17   participated in the litigation"); *see also Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (stating that
18   "[r]epresentative suits with preclusive effect on nonparties [thus] include properly conducted class
19   actions").

### III.    CONCLUSION

21        For the foregoing reasons, the Court grants in part and denies in part Defendant's motion
22   to dismiss.  More specifically, the Court rules as follows.

23   - Section 17200 claim.  The claim is dismissed.  Although Plaintiffs have pled a
24     viable fraud theory, the only relief available for a § 17200 claim is equitable relief.
25     In terms of equitable relief, Plaintiffs have (1) failed to allege that they have
26     standing for injunctive relief and (2) failed to explain how their legal remedies are
27     inadequate such that they would be entitled to restitution.  Plaintiffs have leave to
28     amend this claim – at this juncture only with respect to injunctive relief.  Plaintiffs'

claim for restitution is dismissed without prejudice – *i.e.*, if Plaintiffs uncover during discovery a basis for claiming that legal remedies are inadequate such that they are entitled to restitution, then they may move for leave to amend.

- Section 17500 claim. The analysis for the § 17200 claim is equally applicable here. Accordingly, the claim is dismissed but Plaintiffs have leave to amend with respect to injunctive relief. Plaintiffs' claim for restitution is dismissed without prejudice.
- CLRA claim. To the extent Plaintiffs seek injunctive relief and restitution, the claim is dismissed. Plaintiffs, however, still have a viable damages claim. In addition, Plaintiffs have leave to amend with respect to injunctive relief. Plaintiffs' claim for restitution is dismissed without prejudice.
- Unjust enrichment claim under California law. Because Plaintiffs have failed to explain how legal remedies are inadequate, the claim is dismissed but without prejudice.
- New Jersey consumer fraud claim. Plaintiffs have adequately pled a claim for relief for damages. Plaintiffs have leave to amend with respect to injunctive relief.
- Unjust enrichment under New Jersey law. Because Plaintiffs have failed to explain how legal remedies are inadequate, the claim is dismissed but without prejudice.
- Nationwide class allegations. Plaintiffs cannot apply California law to a nationwide class. Accordingly, the Court strikes the nationwide class allegations. Plaintiffs, however, may proceed with their alternative theory – *i.e.*, a putative California class and a putative New Jersey class.

This order disposes of Docket No. 27.

**IT IS SO ORDERED**.

Dated: November 17, 2020

_____
EDWARD M. CHEN
United States District Judge

18