**GREG COLEMAN LAW**
Alex R. Straus, Esq. (SBN 321366)
alex@gregcolemanlaw.com
William A. Ladnier, Esq. (SBN 330334)
will@gregcolemanlaw.com
Greg F. Coleman, Esq.
(admitted *pro hac vice*)
greg@gregcolemanlaw.com
Adam Edwards, Esq.
(admitted *pro hac vice*)
adam@gregcolemanlaw.com
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel.: (865) 247-0080
Fax: (865) 522-0049

*Attorneys for Plaintiffs*
*[Names and addresses of Additional Counsel for Plaintiffs on Signature Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER JULIAN, MARK PACANA, PAUL FISKRATTI, and WAYNE LEWALD, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TTE TECHNOLOGY, INC., dba TCL NORTH AMERICA,<br><br>Defendant. | Case No. 3:20-CV-02857-EMC<br><br>**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

For this class action Complaint, Plaintiffs Christopher Julian, Mark Pacana, Paul Fiskratti, and Wayne Lewald, individually and on behalf of all others similarly situated, allege as follows:

## PARTIES

1.     Plaintiff Christopher Julian is a resident of the state of California who resides in San Francisco, California. On March 1, 2019, while a resident of California, Plaintiff Julian purchased a new TCL television for personal use that TCL sold through Bestbuy.com. He picked up the television at a Best Buy store in California.

1

2.      Plaintiff Mark Pacana is a resident of the state of New Jersey who resides in Bellmawr, New Jersey. On August 23, 2019, while a resident of New Jersey, Plaintiff Pacana purchased a new TCL television for personal use that TCL sold through Walmart.com.

3.      Plaintiff Paul Fiskratti is a resident of the state of California who resides in Chula Vista, California. On July 13, 2019, while a resident of California, Plaintiff Fiskratti purchased a new TCL television for personal use that TCL sold through Amazon.com.

4.      Plaintiff Wayne Lewald is a resident of the state of New Jersey who resides in Toms River, New Jersey. In December of 2019, while a resident of New Jersey, Plaintiff Lewald purchased a new TCL television at a Walmart retail store for personal use.

5.      Defendant TTE Technology, Inc., dba TCL North America. (hereafter, "TCL" or "Defendant"), is a Delaware corporation, with its principal place of business located within Riverside County at 1860 Compton Avenue, Corona, California 92881. Accordingly, Defendant is a resident of the states of Delaware and California.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) because this is a class action where "any member of a class of plaintiffs is a citizen of a state different from any defendant" and "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs."

7.      Venue is proper in the District pursuant to 28 U.S.C. § 1391(b), and Civil Code Section 1780, subdivision (c) because TCL does substantial business in this District, including making false representations about its televisions' refresh rates (Hz) to sell its televisions to Plaintiff Julian and other class members in this District and the state of California. Attached to this Complaint is a Consumer Legal Remedies Act Affidavit of Venue.

## INTRADISTRICT ASSIGNMENT

8.      A substantial part of the events giving rise to the claim occurred in San Francisco county and therefore, according to Civil L.R. 3-2(c), plaintiffs respectfully request the matter be assigned to the San Francisco Division of this Court.

2

**FACTS**

9.      TCL is headquartered in Corona, California and sells televisions throughout the United States through numerous retailers such as Amazon, Best Buy, Target, and Walmart.

10.      TCL is one of the leading sellers of TVs in the United States and is now the fastest growing TV brand in North America.[1]

11.      Televisions are a product in high demand sold at various prices for a substantial profit.

12.      The television market changes frequently and is highly competitive. TCL sells its televisions through retailers, which would be expected to cease offering TCL products if those products could not be sold at a profit or if consumers preferred a competing brand.

13.      Consumer demand is affected by the technical specifications of televisions, including the hertz ("Hz") specification.

14.      Thus, to remain competitive and stimulate consumer demand, TCL must advertise attractive technical specifications. If consumers were to view TCL TVs as less technologically advanced and choose another brand, it would have a materially adverse effect on TCL's sales and its financial condition.

15.      As a result, TCL and its competitors have continually focused on methods to advance the technical capabilities of televisions to achieve better performance.

**Refresh Rates (Hz): A Primer and its Importance**

16.      The panel of a television displays still images in rapid succession to create the appearance of a moving picture. The frequency at which new image data can be displayed on a panel per second is called refresh rate and is indicated by the label Hz.

17.      All televisions have a refresh rate expressed in Hz as an inherent function and a significant technical specification.

18.      Refresh rate is an important technical specification of the display panel. It is the

---

[1] https://markets.businessinsider.com/news/stocks/tcl-celebrates-its-five-year-anniversary-in-north-america-with-stronger-than-ever-sales-and-a-new-line-of-premium-tvs-1028509304 (last visited Apr. 14, 2019).

3

frequency at which a display is capable of updating pixel values for every pixel on the screen. More simply stated, it means the rate at which a new image can be drawn onto the entire screen.

19.     The new image drawn may appear identical to the image prior (i.e., if a static image is on the screen), but the refresh rate process from one image to the next—the electrical signals updating the pixels—has occurred. This is the accepted meaning of refresh rate industry-wide.

20.     All display panels used in televisions include refresh rate as an inherent function and technical specification. The refresh rate capabilities of a television are indicated with the label "Hz." resulting in a simple translation from technical process to technical specification: if the pixels can be updated 60 times per second, the refresh rate is 60Hz; if the pixels can be updated 120 times per second, the refresh rate is 120 Hz.

21.     A television's Hz measurement—that is, its refresh rate—has traditionally been an industry standard specification.

22.     A higher refresh rate (Hz) allows a television to fully present high frame content to the viewer.

23.     A higher refresh rate (Hz) also allows a television to greatly reduce motion blur that can be endemic in certain programming.

24.     The benefits of a higher refresh rate (Hz) are realized because increasing a television's refresh rate (Hz) gives it the capability to display more images per second. This allows the full rendering of high frame content and also serves to greatly reduce or eliminate motion blur.

25.     Increasing the refresh rate (Hz) of televisions is an expensive and significant technological accomplishment. The default and basic refresh rate (Hz) of televisions is 60Hz. To increase the refresh rate (Hz), television manufacturers have incorporated advanced technology and high-end materials that are capable of the faster response times required to display, hold and rapidly display the images needed for 120Hz television display panels.

26.     Backlight scanning is a general term that indicates that the backlight is not on constantly. Backlight scanning is a less expensive and less effective method intended to address

4

motion blur. Backlight scanning turns on and off the backlight, or portions of the backlight, during the time a single image is being presented.

27.    The refresh rate of a display panel is unrelated to any backlight scanning that may, or may not, be present. Backlight scanning has no effect on refresh rate (Hz), offers no ability to increase refresh rate (Hz) and, as such, has no impact on a television's ability to fully render high-frame content.

28.    A display panel with a refresh rate of 60Hz has a refresh rate of 60Hz regardless of any backlight scanning that is performed because the backlight scanning function, however performed, lacks any relation to updating the pixels.

29.    It is a technical impossibility for backlight scanning to increase the refresh rate (Hz).

30.    For example, a 60Hz television with backlight scanning maintains its 60Hz refresh rate and is incapable of displaying 120Hz frame content (120 images per second).

31.    For any display panel to fully render and display each of the 120 images being delivered in a single second, the pixels must be able to update at 120Hz, i.e., the display panel refresh rate must be 120Hz.

32.    If the refresh rate of the display panel is 60Hz (pixels updating 60 times per second), the display panel would miss every other image because the panel electronics and pixels are unable to update fast enough to capture all image content delivered. Backlight scanning does not alter this conclusion: a 60Hz display panel with backlight scanning will miss every other frame, just as a 60Hz display panel without backlight scanning would miss every other frame

33.    A 60Hz television therefore cannot, through backlight scanning, be transformed into a 120Hz television.

**TCL's Practice of Falsely Advertising Refresh Rate (Hz)**

34.    TCL's competitors began selling televisions claiming to have 120Hz refresh rates.

35.    TCL used backlight scanning and claimed to have higher refresh rate (Hz) even though they did not implement the more expensive technology that would have legitimately allowed them to make that claim.

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

36.     Thus, TCL marketed the technical specifications of its televisions with 60Hz display panels as having a "120 Hz" refresh rate (Hz), even though these televisions were not 120Hz.

37.     For example, in a section of TCL's current website, specification sheets are available for download, Model S405 states that it has a "120Hz CMI effective refresh rate":




38.     TCL's marketing the technical specifications of televisions with 60Hz display panels as having a "120Hz Clear Motion Index (CMI) effective refresh rate" is misleading and untrue. TCL's televisions with 60Hz display panels, in fact, have an effective refresh rate (Hz) of only 60Hz, not 120Hz, because they can only display 60 images per second, not 120 images per second. Backlight scanning cannot increase the Hz (refresh rate) of the television.

39.     TCL knows, or at the very least should know, that backlight scanning cannot increase the effective Hz (refresh rate) of a television.

40.     Not only are TCL's statements untrue and misleading, but the refresh rate (Hz) of the display panel cannot be readily verified by the consumer.

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

41.   TCL repeats misleading and false statements in downloadable specification sheets – "Spec Sheets". For example, in its specification sheet for the TCL S405 television, attached hereto as Exhibit A, TCL states that the television has the following capabilities:

| DISPLAY | |
| --- | --- |
| Clear Motion Index | 120Hz |
| Panel Resolution | 3840 x 2160 |
| Resolution | UHD |
| Display Colors | 1.07 billion |
| High Dynamic Range Format | HDR10 |

Exhibit A at page 2.

42.   TCL's statement that the refresh rate (Hz) of the S-Series S405 is "120Hz" is false and misleading. Upon information and belief, TCL's model S405 television uses a 60Hz display panel, and therefore, it has a refresh rate (Hz) of 60Hz, not 120Hz.

43.   TCL's misleading and untrue statements about the refresh rates (Hz) of its televisions is likely to deceive consumers and are intended to try and influence their decisions on whether to purchase a TCL television.

44.   Upon information and belief, TCL also made these misleading and untrue statements so that retailers would offer TCL's televisions for sale in store and online and to motivate them to recommend TCL's televisions to consumers. If TCL's retailers did not adequately display or offer for sale TCL's televisions, then TCL's net sales would have decreased, and its business would have been harmed.

45.   TCL's misleading and untrue statements about the technical specifications and performance of its televisions allowed TCL to sell its lesser-quality product at a higher price and allowed TCL to realize a profit it may not have otherwise made if it were truthful regarding the performance capabilities of its televisions.

46.   TCL markets directly to consumers through tclusa.com. Upon information and belief, TCL approves and controls the content of tclusa.com, including the statements about refresh rates (Hz) at issue here, from its headquarters and principal place of business in Corona,

7

California.

47.    Upon information and belief, TCL formulates, approves, controls and disseminates its advertising and marketing, including the statements about refresh rates (Hz) at issue here, at its headquarters and sole location in Corona, California. TCL's executives and marketing personnel are employed at TCL's California headquarters.

48.    Therefore, TCL's unlawful conduct, including false advertising, originates from its principal place of business in Corona, California and emanates nationwide

**Plaintiff Julian's Purchase of a TCL Television**

49.    TCL markets and sells its televisions through retail stores and retail store websites

50.    TCL provides "Spec Sheets" to potential customers through retailers online, as well as on its own website, for its televisions. It also makes the user guides for TCL television models available for inspection and viewing. The Hz specification is among the specifications listed on the "Spec Sheet."

51.    In the "Spec Sheets," TCL markets the S405 as having a technical specification of "120Hz." In the user guide, the S405 model television is listed as having "Action Clarity – only on select 120Hz models. Reduces blur, especially for fast-moving images such as sports."

52.    Upon information and belief, the model S405 television TCL markets on its website and on other retailers' websites as having a 120Hz refresh rate, actually has a refresh rate (Hz) of only 60Hz.

53.    On March 1, 2019, Plaintiff Julian purchased a 65-inch TCL S-Series television, model S405, through Bestbuy.com.

54.    Before he purchased this TCL television, Plaintiff Julian reviewed this model on TCL's website to confirm the refresh rate (Hz) of 120Hz. Indeed, one of the reasons Plaintiff Julian purchased the model S405 TCL television was the advertised 120Hz refresh rate as he intended the television to be used to watch action films. The TCL website listed this model as having a refresh rate (Hz) of 120Hz.

55.    The advertised refresh rate (Hz) was false. The TCL television Plaintiff Julian purchased has a refresh rate (Hz) of 60Hz.

8

56.     As a result of TCL's false and misleading statements, Plaintiff Julian paid more for his TCL television than he would have paid had TCL's advertising and representations been truthful.

57.     Plaintiff Julian would like to purchase a TCL television in the future if he knew he could trust their refresh rate advertising. But, without a court ordering TCL to fix their advertising, Plaintiff Julian has no way of knowing whether he can trust TCL's refresh rate advertising.

58.     As a result of TCL's false and misleading statements, Plaintiff Julian paid for a television that TCL misrepresented as using technology and including technical capabilities it did not actually have. Plaintiff Julian would not have bought the television but for TCL's refresh rate (Hz) misrepresentations.

59.     Indeed, Plaintiff Julian experiences poor picture quality when using the TCL television to watch action films.

**Plaintiff Pacana's Purchase of a TCL Television**

60.     On August 23, 2019, Plaintiff Pacana purchased a 65-inch TCL 4-Series television, model 65S421, through Walmart.com.

61.     Before he purchased this TCL television, Plaintiff Pacana reviewed this model on Walmart's website and saw representations that this model had a refresh rate (Hz) of 120Hz. Plaintiff Pacana relied on these refresh rate (Hz) representations, and one of the reasons he purchased this television was its advertised 120Hz refresh rate (Hz).

62.     The advertised refresh rate (Hz) was false. The TCL television Plaintiff Pacana purchased has a refresh rate (Hz) of 60Hz.

63.     As a result of TCL's false and misleading statements, Plaintiff Pacana paid more for his TCL television that he would have paid had TCL's advertising and representations been truthful.

64.     Plaintiff Pacana would like to purchase a TCL television in the future if he knew he could trust their refresh rate advertising. But, without a court ordering TCL to fix their advertising, Plaintiff Pacana has no way of knowing whether he can trust TCL's refresh rate

9

advertising.

65.     As a result of TCL's false and misleading statements, Plaintiff Pacana paid for a television that TCL misrepresented as using technology and technical capabilities it did not actually have. Plaintiff Pacana would not have bought the television but for TCL's refresh rate (Hz) misrepresentations.

66.     Indeed, Plaintiff Pacana experiences poor picture quality when using the TCL television to watch sports, movies, or when playing video games.

**Plaintiff Fiskratti's Purchase of a TCL Television**

67.     On July 13, 2019, Plaintiff Fiskratti purchased a 65-inch TCL 6-Series television, model 65R617, through Amazon.com.

68.     Before he purchased this TCL television, Plaintiff Fiskratti reviewed this model on Amazon's website and saw representations that this model had a refresh rate (Hz) of 120Hz. Plaintiff Fiskratti relied on these refresh rate (Hz) representations, and one of the reasons he purchased this television was its advertised 120Hz refresh rate.

69.     The advertised refresh rate (Hz) was false. The TCL television Plaintiff Fiskratti purchased has a refresh rate (Hz) of 60Hz.

70.     As a result of TCL's false and misleading statements, Plaintiff Fiskratti paid more for his TCL television that he would have paid had TCL's advertising and representations been truthful.

71.     As a result of TCL's false and misleading statements, Plaintiff Fiskratti paid for a television that TCL misrepresented as using technology and technical capabilities it did not actually have. Plaintiff Fiskratti would not have bought the television but for TCL's refresh rate (Hz) misrepresentations.

**Plaintiff Lewald's Purchase of a TCL Television**

72.     In December 2019, Plaintiff Lewald purchased a 50-inch TCL 4-Series television, model 50S421, from a Walmart store.

73.     Before he purchased this TCL television, Plaintiff Lewald reviewed this model in Walmart's store, including the television's packaging, and saw it advertised as having a refresh

10

rate (Hz) of 120Hz. Indeed, one of the reasons Plaintiff Lewald purchased the model 50S421 TCL television was the advertised 120Hz refresh rate, as he intended the television to be used to enjoy movies and sports.

74.     The advertised refresh rate (Hz) was false. The TCL television Plaintiff Lewald purchased has a refresh rate (Hz) of 60Hz.

75.     As a result of TCL's false and misleading statements, Plaintiff Lewald paid more for his TCL television that he would have paid had TCL's advertising and representations been truthful.

76.     As a result of TCL's false and misleading statements, Plaintiff Lewald paid for a television that TCL misrepresented as using technology and technical capabilities it did not actually have.   Plaintiff Lewald would not have bought the television but for TCL's refresh rate (Hz) misrepresentations.

77.     Indeed, Plaintiff Lewald experiences poor picture quality when using the TCL television to watch sports or movies.

## CLASS ALLEGATIONS

78.     Class Definition: Plaintiffs bring this action on behalf of themselves and the following classes:

> "All individuals who, during the class period, purchased a TCL television labeled as having a "Hz" rating twice as high as its actual refresh rate (Hz) in the state of California" (the "California Class"); and

> "All individuals who, during the class period, purchased a TCL television labeled as having a "Hz" rating twice as high as its actual refresh rate (Hz) in the state of New Jersey" (the "New Jersey Class") (collectively, the "Classes").

Plaintiffs seek certification of the California Class for Causes of Action I – IV, and certification of the New Jersey Class on Causes of Action V and VI. Plaintiff reserves the right to modify the class definitions or add sub-classes as necessary prior to filing a motion for class certification.

79.     The "Class Period" is the time period beginning on the date established by the

11

Court's determination of any applicable statute of limitations, after consideration of any tolling and accrual issues, and ending on the date of entry of judgment.

80.     Excluded from the Classes are TCL; any affiliate, parent, or subsidiary of TCL; any entity in which TCL has a controlling interest, any officer, director, or employee of TCL; any successor or assign of TCL; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse and immediate family members; and members of the judge's staff.

81.     <u>Numerosity/Ascertainability</u>: The members of the Classes are so numerous that joinder of all members would be unfeasible and impracticable. The exact number of Class members is unknown to Plaintiff at this time; however, it is estimated that there are more than one thousand (1,000) individuals in the each of the Classes. The identity of such membership is readily ascertainably from TCL's records and the records of its retailers.

82.     <u>Common Questions of Law and Fact Predominate</u>: There are common questions of law and fact as to Plaintiff and all other similarly situated employees, which predominate over questions affecting only individual members including, without limitation, the following:

a.     Whether TCL's statements and representations about the Hz (refresh rate) of its televisions are false or misleading.

b.     Whether TCL violated California's Unfair Competition Law ("UCL"), Business and Professions Code, § 17200 et seq., by, *inter alia*, (i) advertising its televisions as using technology that they actually do not; and (ii) misrepresenting the Hz (refresh rate) of its televisions; and

c.     Whether TCL violated California's False Advertising Law, Business and Professions Code § 17500 et seq., by, *inter alia*, (i) advertising its televisions as using technology that they do not use; and (ii) misrepresenting the Hz (refresh rate) of its televisions.

d.     Whether TCL violated California's Consumer Legal Remedies Act ("CLRA"), Civil Code § 1770, by, *inter alia*, (i) representing that its televisions have characteristics, uses, or benefits, that they do not have, in

12

violation of Ca. Civil Code § 1770(a)(5); (ii) representing that its televisions are of a particular standard, quality, or grade, when they are not, in violation of Ca. Civil Code § 1770(a)(7); or (iii) advertising its televisions with intent not to sell them as advertised, in violation of Ca. Civil Code § 1770(a)(9).

e.  Whether TCL violated New Jersey's Consumer Fraud Act, § 56:8-1, et seq., by, *inter alia*, (i) the use of a misrepresentation; (ii) in connection with the sale or advertisement of any merchandise.

f.  Whether TCL has been unjustly enriched by, *inter alia*, (i) advertising its televisions as using technology that they do not use; and (ii) misrepresenting the Hz (refresh rate) of its televisions.

83.  Typicality: Plaintiff's claims are typical of the claims of the Classes because Plaintiff purchased a TCL television that TCL represented and sold at a higher price by claiming it had a higher refresh rate (Hz), that, in reality, it did not have.

84.  Adequacy of Representation: Plaintiffs are fully prepared to take all necessary steps to represent fairly and adequately the interests of the members of the Classes. Moreover, Plaintiffs' attorneys are ready, willing and able to fully and adequately represent the members of the Classes and Plaintiffs. Plaintiffs' attorneys are experienced in prosecuting class actions and consumer fraud and product liability cases and are committed to vigorously prosecuting this action on behalf of the members of the class.

85.  Superiority: Both the California and New Jersey statutory law on unfair competition is broadly remedial in nature and serves an important public interest in preventing or deterring unfair, deceptive, untrue or misleading advertising. The nature of this action and the format of laws available to Plaintiffs and members of the Classes make the class action format a particularly efficient and appropriate procedure to redress the violations alleged herein.

86.  The California and New Jersey Classes are maintainable under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332.

## <u>CAUSES OF ACTION</u>

### <u>FIRST CAUSE OF ACTION</u>

**FOR VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, BUSINESS & PROFESSIONS CODE SECTION 17200**

87.     Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs as though fully set forth herein.

88.     Plaintiffs bring this claim on behalf of themselves and the California Class.

89.     TCL is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

90.     TCL has engaged and continues to engage in unlawful, fraudulent and/or unfair business acts or practices in California that subsequently emanated nationwide, as well as unfair, deceptive, untrue or misleading advertising in California that subsequently emanated nationwide, in violation of California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200 *et seq*.

91.     TCL violated the unlawful prong of section 17200 by its violation of Cal. Bus. & Prof. Code §17500 and the Consumer Legal Remedies Act, Civil Code section 1770 *et seq*., as alleged below.

92.     TCL violated the fraud prong of section 17200 by making statements about the refresh rates (Hz) and technology used in its television that are likely to deceive consumers and did deceive Plaintiffs.

93.     TCL violated the unfair prong of the UCL because the acts and practices set forth in the Complaint offend established policy and work harm to Plaintiffs and the California Class as well as competition.

94.     TCL violated the unfair, deceptive untrue or misleading advertising prong of the UCL because the acts and practices set forth in the Complaint regarding their misrepresentations and untrue statements to Plaintiffs and the California Class that are intended to deceive them and influence the Plaintiffs' and the Class members' decision to purchase TCL's products.

95.     TCL's utilization of these unlawful or unfair business practices, and the unfair, deceptive, untrue or misleading advertising practices, injured Plaintiffs and the California Class

14

because they paid more for their televisions than they otherwise would have paid absent TCL's deceptive practices.

96.     The acts complained of herein occurred within the last four years immediately preceding the filing of the Complaint in this action.

97.     All the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of TCL's business. TCL's wrongful conduct is a part of a pattern of generalized course of conduct that is still perpetuated and repeated in the State of California.

98.     Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin TCL from continuing its unfair, unlawful and/or deceptive practices, and to restore to Plaintiffs and the California Class the monies that TCL acquired by means of such unfair competition.

99.     Plaintiffs were compelled to retain the services of counsel to file this action to protect their interests and those of the class, to secure injunctive relief and to enforce important rights affecting the public interest. Plaintiffs and the California Class are therefore entitled to an award of attorneys' fees that should not in the interest of justice be paid out of recovery, if any, under Code of Civil Procedure § 1021.5.

## SECOND CAUSE OF ACTION

### FOR VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW, BUSINESS & PROFESSIONS CODE SECTION 17500

100.     Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs as though fully set forth herein.

101.     Plaintiffs bring this claim on behalf of themselves and the California Class.

102.     Plaintiffs and the Class have standing to pursue a cause of action for false advertising under Bus. & Prof. Code §§ 17500, *et. seq.* because they have suffered an injury-in-fact and lost money as a result of TCL's actions as set forth herein.

103.     TCL has disseminated, or caused to be disseminated, to Plaintiffs and the public in California, and across the United States, statements that are untrue or misleading, and which are known, or which by the exercise of reasonable care should be known, to be untrue or misleading,

15

in violation of California's False Advertising Law, Business and Professions Code, § 17500 *et seq*. Specifically, and as alleged above, TCL marketed and advertised the technical specifications of its 60Hz televisions with backlight scanning as "120Hz" when in fact it is 60Hz.

104.    TCL's utilization of these unlawful advertising practices injured Plaintiff and the California Class because they paid more for their televisions than they otherwise would have paid absent TCL's deceptive practices.

105.    All the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of TCL's business. TCL's wrongful conduct is a part of a pattern of generalized course of conduct that is still perpetuated and repeated throughout the United States.

106.    Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing their unfair, unlawful, and/or deceptive practices, and to restore to Plaintiffs and the Class the monies that TCL acquired by means of such unfair competition.

107.    Plaintiffs were compelled to retain the services of counsel to file this action to protect their interests and those of the Class, to secure injunctive relief and to enforce important rights affecting the public interest. Plaintiffs and the Class are therefore entitled to an award of attorney's fees that should not in the interest of justice be paid out of a recovery, if any, under Code of Civil Procedure § 1021.5.

## THIRD CAUSE OF ACTION

## FOR VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT, CIVIL CODE SECTION 1750

108.    Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs as though fully set forth herein.

109.    Plaintiffs bring this claim on behalf of themselves and the California Class.

110.    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. ("CLRA"), is a statute that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

111.   TCL is a "person," as defined by Cal. Civ. Code §§ 1761(c) & 1770 and has provided "services," as defined by Cal. Civ. Code §§ 1761(b) & 1770.

112.   Plaintiffs and the Class are "consumers," as defined by Cal. Civ. Code §§ 1761(d) & 1770, and have engaged in a "transaction," as defined by Cal. Civ. Code §§ 1761(e) & 1770.

113.   TCL has engaged and continues to engage in unfair methods of competition and unfair or deceptive acts or practices intended to result or that results in the sale of goods, in violation of the CLRA, Civil Code, § 1770.

114.   As alleged herein, TCL has and continues to represent that its televisions have characteristics, uses, or benefits that they do not have, in violation of Ca. Civil Code § 1770(a)(5).

115.   As alleged herein, TCL has and continues to represent that its televisions are of a particular standard, quality, or grade, when they are not, in violation of Ca. Civil Code § 1770(a)(7).

116.   As alleged herein, TCL has and continues to advertise its televisions with intent not to sell them as advertised, in violation of Ca. Civil Code § 1770(a)(9).

117.   TCL's representations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiffs and the Class.

118.   Plaintiffs and the Class were harmed and suffered actual damages as a result of TCL's conduct described herein. Had TCL disclosed the true nature and/or not falsely represented its LCD televisions as described herein, Plaintiffs and the Class would not have purchased them, or, alternatively, would have paid significantly less for them.  Plaintiffs and the Class have thus suffered injury in fact, including the loss of money or property, as a result of the conduct of TCL described in this Complaint.

119.   Plaintiffs and the Class seek monetary relief against TCL measured as the greater of actual damages, in an amount to be determined at trial, or statutory damages.

120.   On or about April 24, 2020, Plaintiffs provided Defendant with notice of its alleged violations of the CLRA pursuant to Civil Code, § 1782, subd. (a), via certified mail, demanding that TCL correct such violations. TCL has failed to comply with Plaintiff s' CLRA notice within 30 days.

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

121.     All the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of TCL's business. TCL's wrongful conduct is a part of a pattern of generalized course of conduct that is still perpetuated and repeated throughout California and the United States.

122.     Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin TCL from continuing its unlawful practices.

**FOURTH CAUSE OF ACTION**

**UNJUST ENRICHMENT – CALIFORNIA LAW**

123.     Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs as though fully set forth herein.

124.     Plaintiffs bring this claim on behalf of themselves and the California class.

125.     As alleged herein, TCL advertised and sold televisions to consumers with false refresh rates (Hz), intending that consumers would rely on those misrepresentations and purchase the televisions from TCL.

126.     Had TCL advertised and sold televisions to consumers with the true refresh rates (Hz), Plaintiffs would not have purchased the televisions, or would not have paid as much for the televisions.

127.     TCL's material misrepresentation allowed it to sell at a higher price while saving money on the cost of an actual 120Hz TV which led to profits that otherwise would not have been realized and harmed Plaintiff and the class.

128.     TCL has been knowingly and unjustly enriched to the detriment of Plaintiffs by collecting excess profits to which they have no right.

129.     TCL's retention of profits is unjust because Plaintiffs were deceived by false advertisements and did not receive their benefit of the bargain – a television with 120Hz refresh rate.

130.     TCL has unjustly retained profits and should be required to make Plaintiffs whole.

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

**FIFTH CAUSE OF ACTION**

**VIOLATION OF NEW JERSEY'S CONSUMER FRAUD ACT, SECTION 56:8-1, *et seq*. –**

**NEW JERSEY CLASS**

131.     Plaintiffs re-allege and incorporate by reference each of the preceding paragraphs as though fully set forth herein.

132.     Plaintiffs Pacana and Lewald bring this claim on behalf of themselves and the New Jersey class.

133.     Defendant's representations related to the refresh rates (Hz) of TCL televisions, as described herein, are advertisements as defined by N.J. Stat. Ann. § 58:8-1(a).

134.     The TCL televisions sold by Defendant are merchandise as defined in N.J. Stat. Ann. § 56:8-1(c).

135.     Defendant is a person as defined in N.J. Stat. Ann. § 568-1(d).

136.     Defendant misrepresented the refresh rate (Hz) of TCL televisions. These false statements regarding the refresh rates (Hz) of TCL televisions were untrue, misleading, and deceptive, causing Plaintiffs Pacana and Lewald and other consumers to pay a higher market price for televisions that have lower picture quality than represented and therefore incur an ascertainable loss.

137.     The misrepresented refresh rate (Hz) of TCL televisions is a material fact to Plaintiffs and other consumers. Consumers, including Plaintiffs Pacana and Lewald and the New Jersey Class would not have paid as much for TCL televisions had Defendant accurately disclosed the refresh rate (Hz) of the televisions. Nor could Defendant charge as much for such televisions, as the refresh rate (Hz) is directly related to the amount of money manufacturers and retailers are able to charge for televisions.

138.     Defendant placed the false refresh rate (Hz) in advertisements and spec sheets related to the TCL televisions, intending consumers rely on those misrepresentations and purchase the televisions from Defendant.

139.     Had Defendant disclosed the true refresh rate (Hz), Plaintiffs Pacana and Lewald and New Jersey Class members would not have purchased the televisions, nor would they have

1

1   paid as much for TCL televisions.

2   <center>**SIXTH CAUSE OF ACTION**</center>

3   <center>**UNJUST ENRICHMENT – NEW JERSEY LAW**</center>

4   140.   Plaintiffs allege and incorporate by reference each of the preceding paragraphs as
5   though fully set forth herein.

6   141.   Plaintiffs Pacana and Lewald bring this claim on behalf of themselves and the New
7   Jersey class.

8   142.   TCL realized profits they would not have otherwise gained without falsely
9   advertising their televisions' refresh rates (Hz). TCL's retention of these wrongly-acquired
10  monies is inequitable.

11  143.   TCL realized these profits at the expense of Plaintiffs Pacana and Lewald who
12  cannot readily verify the accuracy of TCL's refresh rate (Hz) claims.

13  144.   Had Defendant disclosed the true refresh rate (Hz), Plaintiffs Pacana and Lewald
14  and members would not have purchased the televisions, nor would they have paid as much for
15  TCL televisions.

16  145.   TCL has been knowingly and unjustly enriched to the detriment of Plaintiffs
17  Pacana and Lewald by collecting excess profits to which they have no right.

18  146.   TCL's retention of profits is unjust because Plaintiffs Pacana and Lewald were
19  deceived by false advertisements and did not receive their benefit of the bargain – a television
20  with 120Hz refresh rate.

21  147.   TCL has unjustly retained profits and should be required to make Plaintiffs whole.

22  <center>**PRAYER FOR RELIEF**</center>

23  WHEREFORE, Plaintiffs pray for the following relief on behalf of themselves and the
24  Classes against the Defendant:

25  1.   Certification of this class action and appointment of Plaintiffs and Plaintiffs'
26  counsel to represent the Class;

27  2.   A declaratory judgment that Defendant violated California's Unfair Competition

28

<center>2</center>

Law, Business and Professions Code, § 17500 *et seq.*;

3.      A declaratory judgment that Defendant violated California's False Advertising Law, Business and Professions Code, § 17500 *et seq.*;

4.      A declaratory judgment that Defendant violated California's Consumer Legal Remedies Act, California Civil Code § 1720 *et seq.*;

5.      A declaratory judgment that Defendant violated New Jersey's Consumer Fraud Act, § 56:8-1 *et seq.*;

6.      That Defendant be permanently enjoined from engaging in the unlawful, unfair, and illegal acts and practices alleged herein;

7.      For actual or statutory damages under California's CLRA, UCL, and FAL, and other enhanced damages where available;

8.      For actual or statutory damages, including treble damages under the New Jersey Consumer Fraud Act and other enhanced damages where available;

9.      For an award of all monies owed under Plaintiffs' claims of unjust enrichment;

10.     For an award of punitive damages;

11.     For reasonable attorneys' fees and costs, pursuant to California Code of Civil Procedure § 1021.5 and/or other applicable law;

12.     Costs of suit herein;

13.     For pre-judgment and post judgment interest; and

14.     Such other and further relief as the Court may deem appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury for all the claims asserted in this Complaint so triable.

*Signature on following page*

3

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: December 17, 2020

**GREG COLEMAN LAW**

*/s/ Alex R. Straus*

Alex R. Straus, Esq. (SBN 321366)
alex@gregcolemanlaw.com
William A. Ladnier, Esq. (SBN 330334)
will@gregcolemanlaw.com
Greg F. Coleman, Esq.
(admitted *pro hac vice*)
greg@gregcolemanlaw.com
Adam Edwards, Esq.
(admitted *pro hac vice*)
adam@gregcolemanlaw.com
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel.: (865) 247-0080
Fax: (865) 522-0049

**CRUEGER DICKINSON LLC**

Charles J. Crueger, Esq.
(admitted *pro hac vice*)
cjc@cruegerdickinson.com
Erin K. Dickinson, Esq.
(to be admitted *pro hac vice*)
ekd@cruegerdickinson.com
Ben Kaplan, Esq.
(to be admitted *pro hac vice*)
bak@cruegerdickinson.com
4532 North Oakland Avenue
Whitefish Bay, WI 53211
Tel.: (414) 210-3868

**HUDOCK LAW GROUP, S.C.**

Luke P. Hudock
(admitted *pro hac vice*)
lphudock@law-hlg.com
P.O. Box 83
Muskego, WI 53150
Tel.: (414) 526-4906

*Attorneys for Plaintiffs*

4