# ATTACHMENT 1

**GREG COLEMAN LAW**
Alex R. Straus, Esq. (SBN 321366)
alex@gregcolemanlaw.com
William A. Ladnier, Esq. (SBN 330334)
will@gregcolemanlaw.com
Greg F. Coleman, Esq.
(admitted *pro hac vice*)
greg@gregcolemanlaw.com
Adam Edwards, Esq.
(admitted *pro hac vice*)
adam@gregcolemanlaw.com
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel.: (865) 247-0080
Fax: (865) 522-0049

*Attorneys for Plaintiffs*
*[Names and addresses of Additional Counsel for Plaintiffs on Signature Page]*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER JULIAN, MARK PACANA, PAUL FISKRATTI, and WAYNE LEWALD, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TTE TECHNOLOGY, INC., dba TCL NORTH AMERICA,<br><br>Defendant. | Case No. 3:20-CV-02857-EMC<br><br>**PLAINTIFFS' [PROPOSED] SUR-REPLY RE: DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Judge:  Hon. Edward M. Chen<br>Crtrm:  5—17th Floor<br>Hearing Date:  February 25, 2021<br>Time:  1:30 PM |

Plaintiffs respectfully submit this sur-reply in opposition to TTE's Motion to Dismiss Plaintiffs' Second Amended Complaint, in order to bring to the Court's attention new and further support for Plaintiffs' position that they have Article III standing to pursue injunctive relief.

TTE's Motion to Dismiss argued in part that Plaintiffs lacked Article III standing to pursue injunctive relief. (Doc. 66, pp. 10-11.) Plaintiffs' response showed TTE was asking the Court to adopt a flawed analysis of Article III standing, based on arguments considered and rejected by *Davidson v. Kimberly-Clark*, 889 F.3d 956 (9th Cir. 2018), and its progeny. (Doc. 69, pp. 3-4.) Nonetheless, TTE's reply argues (without evidence) that "Plaintiffs are now on notice of the meaning of CMI" and therefore "cannot claim to be deceived by these terms in the future." (Doc. 70, pp. 4-6.) TTE argues Plaintiffs are "indisputably aware that '120Hz CMI' does not mean native 120Hz, they can look at the product label to determine whether a TTE TV is 120Hz CMI, cannot be misled in the future, and lack standing to pursue injunctive relief." (*Id.*, p. 6.)

TTE's reply argument is not only contrary to binding precedent ("A consumer's inability to rely on a representation made on a package, even if the consumer knows or believes the same representation was false in the past, is an ongoing injury that may justify an order barring the false advertising." *Davidson*, 889 F.3d at 961), it is contradicted by TTE's newly produced Responses to Plaintiffs' Requests for Admission.

First, TTE admitted that "CMI" is a TTE-specific marketing term that TTE does not define on the television box or in the user manual:

> **RFA 9**: "Clear Motion Index" (CMI) is a term TTE Technology, Inc. developed to market its televisions.
>
> TTE Response: Admit.
>
> **RFA 11**: TTE Technology, Inc. does not define "Clear Motion Index" (CMI) on the box of its LCD televisions.
>
> TTE Response: Admit that TTE Technology, Inc. does not define "Clear Motion Index" (CMI) on the cartons within which 120Hz CMI televisions are sold.

> **RFA 12**: TTE Technology, Inc. does not define "Clear Motion Index" (CMI) in the user manual of its LCD televisions.
>
> TTE Response: Admit only that TTE Technology, Inc. does not define "Clear Motion Index" (CMI) in the user manuals for 120Hz CMI televisions, but that certain user manuals discuss native refresh rates/frame rates and backlight scanning/black frame insertion.

(Straus Dec. Exhibit 1.) Thus, whatever CMI means today, TTE could change it tomorrow. There is no factual basis for TTE to argue that Plaintiffs—or anyone else—can "easily determine" the meaning of CMI by "'reading' the product packaging" (Doc. 70, p.5), since TTE does not define "CMI" on the packaging and, absent an injunction, the term has no fixed meaning independent of what TTE gives it.

Second, TTE objected to Plaintiffs' request to admit that televisions TTE markets as "120Hz Clear Motion Index (CMI) effective refresh rate" have a 60Hz refresh rate as vague and ambiguous, and requiring expert testimony:

> **RFA 5**: LCD televisions TTE Technology, Inc. markets as "120Hz Clear Motion Index (CMI) effective refresh rate" have a 60Hz refresh rate.
>
> TTE Response: Responding Party objects to this Request as vague and ambiguous.
>
> Responding Party further objects that the Request calls for expert opinion and is therefore premature.
>
> Subject to and without waiving the foregoing objections, Responding Party responds as follows:
>
> Admit that certain LCD televisions TTE Technology, Inc. markets for sale as "120Hz Clear Motion Index (CMI) effective refresh rate" have a 60Hz native refresh rate, and are advertised as such. Otherwise denied.

(Straus Dec. Exhibit 1.) What is "native refresh rate"? Plaintiffs are unsure what TTE means by that, since TTE also objected to and denied Plaintiffs' definitions of "refresh rate" and "native refresh rate":

> **RFA 3**: Refresh rate means the frequency at which a display is capable of updating pixel values for every pixel on the screen.

> TTE Response: Responding Party objects that the Request calls for expert opinion and is therefore premature.
>
> Subject to and without waiving the foregoing objections, Responding Party responds as follows:
>
> Denied with the following explanation: Refresh rate means the number of times an image is shown per second.
>
> **RFA 4**: Native refresh rate means the frequency at which a display is capable of updating pixel values for every pixel on the screen.
>
> TTE Response: Responding Party objects that the Request calls for expert opinion and is therefore premature.
>
> Subject to and without waiving the foregoing objections, Responding Party responds as follows:
>
> Denied with the following explanation: Native refresh rate refers to the refresh rate of the LCD panel, without considering the effects of technologies like backlight scanning.

(Straus Dec. Exhibit 1.) These responses suggest TTE believes backlight scanning can increase refresh rate. But TTE then objected to Plaintiffs' request to admit that the "refresh rate of a 60Hz LCD television with backlight scanning is 60Hz," as vague, ambiguous, and as requiring expert testimony:

> **RFA 7**: The refresh rate of a 60Hz LCD television with backlight scanning is 60Hz.
>
> TTE Response: Responding Party objects to this Request as vague and ambiguous. The Request does not specify whether the LCD television is equipped with other motion blur technologies.
>
> Responding Party further objects that the Request calls for expert opinion and is therefore premature.
>
> Subject to and without waiving the foregoing objections, Responding Party responds as follows:
>
> Admit that the native refresh rate of an LCD television equipped with a 60Hz panel plus backlight scanning technology, and no other motion blur technologies, is 60Hz. Otherwise denied.

3
PLAINTIFFS' [PROPOSED] SUR-REPLY RE: DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT, CASE NO. 3:20-CV-02857-EMC

(Straus Dec. Exhibit 1.) TTE also objected to the request to admit that televisions it "markets as '120Hz Clear Motion Index (CMI) effective refresh rate' cannot fully display 120Hz source content," as vague, ambiguous and requiring expert opinion:

> **RFA 6**: LCD televisions TTE Technology, Inc. markets as "120Hz Clear Motion Index (CMI) effective refresh rate" cannot fully display 120Hz source content.
>
> <u>TTE Response</u>: Responding Party objects to this Request as vague and ambiguous as to the meaning of "fully display."
>
> Responding Party further objects that the Request calls for expert opinion and is therefore premature.
>
> Subject to and without waiving the foregoing objections, Responding Party responds as follows:
>
> Admit that certain LCD televisions TTE Technology, Inc. markets for sale as "120Hz Clear Motion Index (CMI) effective refresh rate" treat native 120Hz source content as if that source content was native 60Hz. Backlight scanning technology then increases the number of images shown to 120 per second. Otherwise denied.

(Straus Dec. Exhibit 1.)

Since the parties cannot agree on what TTE's advertising means, and since TTE objected to and denied basic Requests about what its advertising means as vague, ambiguous, and requiring expert opinion, there is no basis for TTE to contend Plaintiffs can simply look at the packaging to determine what TTE means by 120Hz CMI or 120Hz CMI Effective Refresh Rate. Indeed, TTE implies in its response to request for admission No. 6 that its 120Hz CMI Effective Refresh Rate can display 120 images per second and, thus, can fully display 120Hz content.[1]

If nothing else, TTE's responses establish that the parties disagree about the meaning of the terms at issue and the Court should reject TTE's factual argument that Plaintiffs are "on notice of the meaning of CMI." Plaintiffs have standing to pursue injunctive relief.

---

[1] Plaintiffs intend to meet and confer with TTE on TTE's Responses, as Plaintiffs believe the Responses are deficient and in need of supplementation.

| | |
|---|---|
| Dated: February 23, 2020 | s/Alex R. Straus |

**GREG COLEMAN LAW**
Alex R. Straus, Esq. (SBN 321366)
alex@gregcolemanlaw.com
William A. Ladnier, Esq. (SBN 330334)
will@gregcolemanlaw.com
Greg F. Coleman, Esq. (admitted *pro hac vice*)
greg@gregcolemanlaw.com
Adam Edwards, Esq. (admitted *pro hac vice*)
adam@gregcolemanlaw.com
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel.: (865) 247-0080
Fax: (865) 522-0049

**CRUEGER DICKINSON LLC**
Charles J. Crueger, Esq. (admitted *pro hac vice*)
cjc@cruegerdickinson.com
Erin K. Dickinson, Esq. (admitted *pro hac vice*)
ekd@cruegerdickinson.com
Ben Kaplan, Esq. (to be admitted *pro hac vice*)
bak@cruegerdickinson.com
4532 North Oakland Avenue
Whitefish Bay, WI 53211
Tel.: (414) 210-3868

**HUDOCK LAW GROUP, S.C.**
Luke P. Hudock (admitted *pro hac vice*)
lphudock@law-hlg.com
P.O. Box 83
Muskego, WI 53150
Tel.: (414) 526-4906

*Attorneys for Plaintiffs*