UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER JULIAN, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>TTE TECHNOLOGY, INC.,<br><br>            Defendant. | Case No. 20-cv-02857-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Docket No. 66 |

Plaintiffs are four individual consumers. They have filed a class action against Defendant TTE Technology, Inc., alleging that the company engaged in false advertising with respect to its televisions. Previously, the Court granted in part and denied in part TTE's motion to dismiss Plaintiffs' first amended complaint ("FAC") and gave Plaintiffs limited leave to amend. Plaintiffs have since filed their second amended complaint ("SAC") and TTE now challenges the SAC with another motion to dismiss. This is the motion currently pending before the Court. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** TTE's motion.[1] However, the Court shall give Plaintiffs limited leave to amend with respect to their request for injunctive relief.

## I.      FACTUAL & PROCEDURAL BACKGROUND

In the SAC, Plaintiffs have asserted the following causes of action:

(1) Violation of California Business & Professions Code § 17200.

(2) Violation of California Business & Professions Code § 17500.

---

[1] Plaintiffs' motion for leave to file a sur-reply, *see* Docket No. 72, is granted.

1  (3) Violation of the California Consumer Legal Remedies Act.  *See* Cal. Civ. Code § 1750
2  *et seq.*
3  (4) Unjust enrichment under California law.
4  (5) Violation of the New Jersey Consumer Fraud Act.  *See* N.J. Stat. Ann. § 58:8-1 *et seq.*
5  (6) Unjust enrichment under New Jersey law.

All causes of action are based on TTE's advertising of its televisions as having a "120Hz CMI effective refresh rate." According to Plaintiffs, it is false or misleading for TTE to market the televisions as having a "120Hz CMI effective refresh rate" when in fact the televisions have a 60Hz refresh rate.  *See, e.g.*, SAC ¶ 33 (alleging that "[a] 60Hz television . . . cannot, through backlight scanning, be transformed into a 120Hz television"). Part of the relief Plaintiffs seek is a permanent injunction which bars TTE "from engaging in the unlawful, unfair, and illegal acts and practices alleged herein." SAC, Prayer for Relief ¶ 6; *see also* SAC ¶¶ 98, 106 (in § 17200 and § 17500 claims, asking for an injunction).

In the pending motion, TTE argues that Plaintiffs have failed to adequately plead that they have standing to seek injunctive relief. TTE also argues that any request for restitution as a remedy should be dismissed, as the Court previously ordered in granting (in part) TTE's motion to dismiss the FAC.

## II. <u>DISCUSSION</u>

A.  <u>Legal Standard</u>

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St.*

2

1  *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a
2  complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient
3  allegations of underlying facts to give fair notice and to enable the opposing party to defend itself
4  effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial
5  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable
6  inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The
7  plausibility standard is not akin to a probability requirement, but it asks for more than a sheer
8  possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

B.  <u>Injunctive Relief</u>

In its order granting (in part) TTE's motion to dismiss the FAC, the Court held that Plaintiffs had failed to adequately allege standing for injunctive relief. In the pending motion, TTE argues that, in the SAC, Plaintiffs have still failed to establish standing for injunctive relief.

In the Ninth Circuit, *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), provides the yardstick by which district courts assess requests for injunctive relief in a false advertising case. The plaintiff in *Davidson* had "paid extra for wipes labeled as 'flushable' because she believed that flushable wipes would be better for the environment, and more sanitary, than non-flushable wipes." *Id.* at 961. According to the plaintiff, the wipes were not in fact flushable because they were not suitable for disposal down a toilet – *i.e.*, upon being flushed, the wipes did not disperse in second or minutes thereafter. The plaintiff sought to recover the premium she paid as well as an order requiring the defendant to stop marketing its wipes as flushable. *See id.*

The main issue on appeal was whether the plaintiff had standing to seek the injunctive relief she requested. The Ninth Circuit began by noting that standing requires an injury in fact that is concrete, particularized, and actual or imminent. *See id.* at 967. The court underscored that, "[f]or injunctive relief, which is a *prospective* remedy, the threat of injury must be 'actual and imminent, not conjectural and hypothetical.'" *Id.* (emphasis added). Also, "[w]here standing is premised entirely on the threat of repeated injury a plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way.'" *Id.*

The Ninth Circuit acknowledged that there was a split of authority as to whether, in a false advertising case, a plaintiff could have standing for injunctive relief once she was aware of the deceptive nature of the advertising.

> We hold that a previously deceived consumer *may* have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm. Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. *In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to. In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved*. Either way, we share one district court's sentiment that we are "not persuaded that injunctive relief is *never* available for a consumer who learns after purchasing a product that the label is false."

*Id.* at 969-70 (emphasis added and in original).

As to whether the plaintiff in *Davidson* had adequately alleged standing for injunctive relief, the Ninth Circuit held that she had.

> Davidson alleged that she "continues to desire to purchase wipes that are suitable for disposal in a household toilet"; "would purchase truly flushable wipes manufactured by [KimberlyClark] if it were possible"; "regularly visits stores . . . where [Kimberly-Clark's] 'flushable' wipes are sold"; and is continually presented with Kimberly-Clark's flushable wipes packaging but has "no way of determining whether the representation 'flushable' is in fact true."
>
> We are required at this stage of the proceedings to presume the truth of Davidson's allegations and to construe all of the allegations in her favor. Though we recognize it is a close question, based on the FAC's allegations, we *hold that Davidson adequately alleged that she faces an imminent or actual threat of future harm due to Kimberly-Clark's false advertising. Davidson has alleged that she desires to purchase Kimberly-Clark's flushable wipes*. Her desire is based on her belief that "it would be easier and more sanitary to flush the wipes than to dispose of them in the garbage." As in *Ries*, the FAC is "devoid of any grounds to discount [Davidson's] stated intent to purchase [the wipes] in the future."
>
> Davidson has also sufficiently alleged an injury that is "concrete and particularized." . . . *Davidson's alleged harm is her inability to rely on the validity of the information advertised on Kimberly-Clark's*

4

> *wipes despite her desire to purchase truly flushable wipes.* This court recognizes a history of lawsuits based on similar informational injuries.
>
> Davidson has also shown "a sufficient likelihood that [s]he will again be wronged in a similar way. Despite now knowing that the "flushable" labeling was false at the time of purchase, "[s]hould [Davidson] counter the denomination ['flushable'] on a [Kimberly-Clark wipes package] at the grocery store today, [she] could not rely on that representation with any confidence." In other words, *Davidson faces the similar injury of being unable to rely on Kimberly-Clark's representations of its product in deciding whether or not she should purchase the product in the future*.

*Id.* at 970-72 (emphasis added).

In the instant case, two of the four named plaintiffs (Mr. Julian and Mr. Pacano) have tried to map onto *Davidson* by alleging as follows:

- "As a result of [TTE's] false and misleading statements, Plaintiff . . . paid more for his [TTE] television than he would have paid had [TTE's] advertising and representations been truthful." SAC ¶¶ 56, 63.
- "Plaintiff . . . would like to purchase a [TTE] television in the future if he knew he could trust their [sic] refresh rate advertising. But, without a court ordering [TTE] to fix their [sic] advertising, Plaintiff . . . has no way of knowing whether he can trust [TTE's] refresh rate advertising." SAC ¶¶ 57, 64.
- "As a result of [TTE's] false and misleading statements, Plaintiff . . . paid for a television that [TTE] misrepresented as using technology and including technical capabilities it did not actually have. Plaintiff would not have bought the television but for [TTE's] refresh rate (Hz) misrepresentations." SAC ¶¶ 58, 65.
- Plaintiff has experienced poor picture quality when using the TTE television for, *e.g.*, action movies, sports, or video games. *See* SAC ¶¶ 59, 66.

1. Plausibility

As an initial matter, TTE argues that it is implausible that Mr. Julian and Mr. Pacano would actually like to purchase a TTE television in the future. According to TTE, based on the allegations above, these plaintiffs wanted a 120Hz television only, not a 60Hz television with poorer picture quality; thus, "correcting TTE's alleged advertising to 60Hz would not affect [their]

5

purchasing decisions." Mot. at 9.

There are two problems with TTE's argument. First, TTE has taken an overly narrow view of the situation. The injunctive relief sought is not just about compelling TTE to market its televisions as 60Hz televisions. Rather, the point of the injunctive relief is to prevent TTE from engaging in false advertising so that Mr. Julian and Mr. Pacano can *rely* (as in *Davidson*) on TTE's advertising in the future – *i.e.*, so that they can decide whether or not to purchase a television from TTE.

Second, it is not altogether clear that Mr. Julian and Mr. Pacano would never buy a television from TTE in the future. It is true that both individuals alleged that they would not have bought the televisions but for the misrepresentation about the refresh rate. But the two men also alleged that they paid more than they would have had they known the truth. It is not inherently contradictory for Mr. Julian and Mr. Pacano to make both allegations (*i.e.*, to assert that they would not have bought the televisions or would have paid less for the televisions had there been no false advertising). Notably, the plaintiff in *Davidson* made both allegations as well. *See Davidson*, 889 F.3d at 962 ("Davidson would not have purchased the Scott Wipes, or would have paid less for the Scott Wipes, had Kimberly-Clark not 'misrepresented (by omission and commission) the true nature of their Flushable Wipes.'").

The situation here is different from that in *Anthony v. Pharmavite*, No. 18-cv-02636-EMC, 2019 U.S. Dist. LEXIS 1899 (N.D. Cal. Jan. 4, 2019). In *Anthony*, the defendant sold biotin supplements. The labels for the supplements stated that the supplements "'may support healthy hair, skin and nails.'" *Id.* at *1. According to the plaintiffs, this representation on the labeling was misleading because "most people obtain more than enough biotin from their daily diets, so biotin supplements are unneeded, superfluous, and will provide no health benefits. Only a miniscule percentage of individuals with biotin deficiencies could potentially benefit from biotin supplements." *Id.* at *1-2. This Court held that the plaintiffs in *Anthony* had failed to allege standing to support injunctive relief. First, the plaintiffs did "not allege they intend to purchase the Biotin Products again in the future. In fact, Plaintiffs allege 'had [they] known the truth about [Pharmavite's] misrepresentations, [they] would not have purchased the Biotin Product.'" *Id.* at

6

1   *16-17.  Second,

> Plaintiffs' claim is predicated on the premise that, as a matter of scientific fact, *biotin supplements "are unneeded, superfluous, and will not provide any benefits" to anyone without a biotin deficiency*. *Id.* ¶ 9.  Thus, this is not a situation, like in *Davidson*, where Plaintiffs "would [still] like to" purchase biotin supplements in the future if Pharmavite's advertising were more truthful, or if Pharmavite "improved" its Biotin Products.  The import of Plaintiffs' allegations is that *Pharmavite can do nothing to alter its advertising or product to make biotin supplements beneficial to Plaintiffs*.  Plaintiffs do not face the "injury of being unable to rely on [Pharmavite]'s representations of its [Biotin Products] in deciding whether or not [they] should purchase the [Biotin Products] in the future."  They therefore do not have standing to seek injunctive relief.

*Id.* at *17 (emphasis added).  The Biotin Product had no inherent value to the *Anthony* Plaintiffs, thus negating any possible intent to purchase it again.  As is clear from the above, *Anthony* presented a unique situation where (as alleged by the plaintiffs) the product was essentially useless to the plaintiffs and could not be improved in any way.

### 2. Actual or Imminent Threat of Future Harm

TTE argues next that, even if it were plausible that Mr. Julian and Mr. Pacano would like to purchase a TTE television in the future, they still have not adequately alleged standing because they have not alleged an *actual or imminent* threat of future harm.

#### a. Likelihood of Being Deceived in the Future

According to TTE, there is no actual or imminent threat of future harm because, now that the individuals know what is meant by "120Hz CMI effective refresh rate," they will not be deceived in the future: "merely looking at the online specifications or product label would clear any ambiguity."  Mot. at 10.  This argument is not persuasive for several reasons.

First, as above, TTE takes too circumscribed a view of matters.  As indicated in *Davidson*, the harm to Mr. Julian and Mr. Pacano here is their inability to rely TTE's advertising.

Second, the cases that TTE cites are not persuasive authority and are distinguishable.  For example, in *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534 PSG (JCx), 2018 U.S. Dist. LEXIS 217534 (C.D. Cal. Oct. 17, 2018), the defendant manufactured pretzels and sold them in opaque packages each containing more than forty percent empty stage (known in the industry as

7

"slack fill"). The plaintiff bought a package of pretzels and was surprised to discover so much slack fill. He filed suit, "claiming that the amount of slack-fill deceives consumers into believing that Defendant's packages contain more pretzels than they actually do." *Id.* at *2. The defendant moved to dismiss the plaintiff's request for injunctive relief, arguing, *inter alia*, that the plaintiff could "determine the amount of pretzels in a bag by reading the label or feeling the bag when making future packages, so he does not need to rely upon the size of the package." *Id.* at *7-8. The court agreed with the defendant:

> [N]ow that Plaintiff is on notice about potential underfilling, he could easily determine the number of pretzels in each package before making a future purchase by simply reading the back panel, which lists the number of servings in each bag and the number of pretzels in each serving. Or, he could feel the bag to determine whether it is filled with pretzels or air. Plaintiff has provided no response to this argument, and nothing in his complaint explains why he will be unable to determine how many pretzels are in each package – regardless of the amount of slack-fill – when contemplating future purchases.
>
> The Court finds that under the circumstances of this case, Plaintiff has not adequately explained why he will be deceived by slack-fill in the future, now that he knows that he can easily determine the number of pretzels in each package by simply reading the label. This sets him apart from the plaintiff in *Davidson*, *who could not easily determine whether the defendant's previous misrepresentations had been cured without first buying the product*. Because Plaintiff has not explained why he must rely on the size of the package in making future purchases, the Court finds that he has not alleged an "actual and imminent" threat of future injury.

*Id.* at *12-14 (emphasis added); *see also id.* at *11 (noting that the *Davidson* plaintiff was not able "to rely on the product's label to know if any wipes she wished to purchase in the future could actually be flushed"). *Accord Matic v. United States Nutrition, Inc.*, No. CV 18-9592 PSG (AFMx), 2019 U.S. Dist. LEXIS 131576, at *25 (C.D. Cal. Mar. 27, 2019) (noting that plaintiff failed to explain how he was likely to be deceived by the size of a protein powder container in the future; "[p]laintiff has not contested the accuracy of the product weight information on the label and he now knows from opening the protein powder container exactly how much protein powder the weight on the label corresponds to").)

In *Joslin v. Clif Bar & Co.*, No. 4:18-cv-04941-JSW, 2019 U.S. Dist. LEXIS 192100 (N.D. Cal. Aug. 26, 2019), Judge White reached a similar holding. The defendant in *Joslin*

8

1   manufactured and sold energy bars, including ones labeled "white chocolate." The plaintiffs filed

2   suit because the "white chocolate" bars did not actually contain white chocolate: as reflected in the

3   ingredients list, the contents of the bars included cocoa butter but not "any of the dairy ingredients

4   cited in regulations issued by the [FDA] regarding the standard of identity for white chocolate."

5   *Id.* at *2. According to the defendant, the plaintiffs did not have standing to seek injunctive relief

6   because, *inter alia*, the plaintiffs could not "possibly be deceived in the future" in light of the fact

7   that "white chocolate is not listed on the Products' ingredient list and the front of the package

8   includes the phrase 'Natural Flavor,' thereby disclosing to Plaintiffs that 'real' white chocolate is

9   not an ingredient." *Id.* at *10. Judge White agreed with the defendant, noting that, "[a]lthough

10  some part of a product's packaging may be misleading, when another part of that product's

11  packaging discloses the truth of the product, district courts have held that a plaintiff's knowledge

12  of the truth forecloses the risk of future harm." *Id.* Like the *Cordes* court, the *Joslin* court

13  distinguished *Davidson*: while the *Davidson* plaintiff

> could not know without purchasing the flushable wipes whether the wipes were truly flushable, Plaintiffs do not need to purchase the Products again in order to know whether the Products contain white chocolate. Instead, Plaintiffs need only inspect the ingredient list to discovery that the Products do not contain white chocolate. Additionally, the Products' labels contain the phrase "Natural Flavor." Plaintiffs do not address that phrase in their complaint, but that phrase may serve to show the characterizing taste of white chocolate and macadamia nut is from flavor rather than the real ingredient.

20  *Id.* at *12. *Accord Rahman v. Mott's LLP*, No. 13-cv-03482-SI, 2018 U.S. Dist. LEXIS 164620,

21  at *9-10 (N.D. Cal. Sept. 25, 2018) (noting that, in *Davidson*, "there was a continued risk that the

22  plaintiff could not rely on the label to determine whether wipes were flushable in the future"; here,

23  "[u]nlike *Davidson*, where a consumer's inability to rely on packaging misrepresentations in the

24  future was an ongoing injury, Rahman is able to rely on the packaging now that he understands the

25  'No Sugar Added' label"); *Yothers v. Jfc Int'l*, No. 20-cv-01657-RS, 2020 U.S. Dist. LEXIS

26  156470, at *14 (N.D. Cal. May 14, 2020) (noting that "Plaintiffs now know, even if they did not

27  when they purchased defendants' product, that 95-99% of wasabi products sold in North America

28  do not actually contain wasabi" and, thus, "[t]hey now can rely on labelling, in particular

United States District Court
Northern District of California

ingredient lists, to know whether the products they are purchasing fall into that vast majority[;] [u]nlike in *Davidson*, where the plaintiffs would have to purchase the defendant's wipes, take them home, and test their plumbing to know if the product was improved, plaintiffs here can simply read the packaging, before purchasing, and make an informed decision").

*Cordes* and *Joslin*, of course, are not binding authorities. And not all courts have agreed with their reasoning. For example, in *Shank v. Presidio Brands, Inc.*, No. 17-cv-00232-DMR, 2018 U.S. Dist. LEXIS 70134 (N.D. Cal. Apr. 25, 2018), Judge Ryu rejected the reasoning animating those cases. In *Shank*, the defendant advertised its Every Man Jack products as natural, naturally derived, nontoxic, and so forth. The plaintiff alleged that this was false advertising because the products actually contained numerous ingredients that were artificially engineered through multiple synthetic processes. *See id.* at *2. According to the plaintiff, he would like to buy the defendant's products in the future – if they were reformulated to contain all-natural ingredients – but he was hesitant to rely on the defendant's labeling due to the misrepresentations being challenged in the lawsuit. *See id.* at *8.

The defendant argued that the plaintiff did not have standing to seek injunctive relief. According to the defendant, the plaintiff in *Davidson* had standing because, if she wanted to buy flushable wipes in the future, she did not have a

> ready means to verify whether the wipes were actually flushable. By contrast, . . . [the *Shank* plaintiff] "faces no risk of repeated injury from being misled," because he can simply look at the product's ingredients list and "easily determine at the time of purchase if the same allegedly offensive ingredients are still present."

*Id.* at *9.

Judge Ryu noted that "*Davidson* did not address the exact defense argument presented here" but concluded that "*Davidson*'s favorable citations to two decisions suggests that the Ninth Circuit would reject [the defendant's] reasoning." *Id.* at *10.

- First, the *Davidson* court cited to *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 U.S. Dist. LEXIS 34498 (N.D. Cal. Mar. 18, 2015), where the district court explained that, "[w]hen a consumer discovers that a representation about a product

10

United States District Court
Northern District of California

1    is false, she doesn't know that another, later representation by the same

2    manufacturer is also false. . . . A material representation injures the consumer not

3    only when it is untrue, but also when it is *unclear* whether or not it is true." *Id.* at

4    \*9 (emphasis in original).

5  - Second, and more important, the *Davidson* court cited to *Ries v. Arizona Beverages*

6    *USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012). In *Ries*, the plaintiffs claimed that the

7    defendants had falsely advertised their iced tea as "All Natural" and "100%

8    Natural" because the products actually contained high fructose corn syrup and citric

9    acid. The defendants argued that the plaintiffs lacked standing because they were

10   not "threatened by future harm": "they are now aware of the contents of AriZona

11   beverages, and can no longer be deceived." *Id.* at 533. The *Ries* court disagreed:

12   "Plaintiffs request to be relieved from false advertising by defendants in the future,

13   and the fact that they discovered the supposed deception some years ago does not

14   render the advertising any more truthful. Should plaintiffs encounter the

15   denomination 'All Natural' on an AriZona beverage at the grocery store today, they

16   could not rely on that representation with any confidence." *Id.*

17   Judge Ryu emphasized that *Ries* was especially telling because, there, the plaintiff could

18 have just looked for "the words 'high fructose corn syrup' on the bottle's ingredients list during

19 any future contemplated beverage purchase." *Shank*, 2018 U.S. Dist. LEXIS 70134, at \*12.

20 "*Davidson*'s adoption of the analysis in *Ries* strongly suggests that the Ninth Circuit would reject

21 [the defendant's] reasoning that a plaintiff cannot establish standing for injunctive relief if she can

22 check whether she is being lied to by examining the fine print on a product label." *Id.* Judge Ryu

23 also pointed out that, in *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008), the Ninth

24 Circuit had held that a reasonable consumer should not "be expected to look beyond misleading

25 representations on the front of [packaging] to discover the truth from the ingredient list in small

26 print on the side of the [packaging]." *Id.* at 939.

27   Judge Ryu's analysis in *Shank* is persuasive. However, even if the Court were to follow

28 *Cordes* and *Joslin*, those cases are distinguishable because, there, the plaintiffs had "ready access

1     to information to test the veracity of the representation." *Shank*, 2018 U.S. Dist. LEXIS 70134, at
2     *16.  Here, in contrast, Mr. Julian and Mr. Pacano do not have such ready access prior to
3     purchasing.  Rather, the two plaintiffs here are like the *Davidson* plaintiff who could not know
4     whether wipes were truly flushable without purchasing them.  Mr. Julian and Mr. Pacano could
5     not know whether the TTE televisions were truly 120Hz or 60Hz without purchasing them.

              b.        Repeat Injury

7            TTE maintains that, even if the Court is not persuaded by *Cortes* and *Joslin*, there is a
8     second, independent reason why there is no actual or imminent threat of future harm here.  That is,
9     there is no *actual or imminent threat* of future harm because, even though Mr. Julian and Mr.
10    Pacano have claimed they would like to purchase a TTE television in the future, there is nothing
11    concrete to suggest that there is a real intent there.  In other words, TTE has challenged the
12    plausibility of Plaintiffs' asserted interest in purchasing another TTE television within the
13    discernible future.  TTE underscores that, in *Davidson*, the plaintiff had made additional
14    allegations – *e.g.*, that she "'regularly visits stores . . . where [Kimberly-Clark's] "flushable" wipes
15    are sold'[] and is continually presented with Kimberly-Clark's flushable wipes packaging."
16    *Davidson*, 889 F.3d at 970.  The Ninth Circuit also noted in *Davidson* that the operative complaint
17    was "'devoid of any grounds to discount [the plaintiff's] stated intent to purchase [the wipes] in
18    the future.'" *Id.* at 971.
19           There is case law that supports TTE's views on *Davidson*.  For example, in *Anderson v.*
20    *Apple Inc.*, No. 3:20-cv-02328-WHO, 2020 U.S. Dist. LEXIS 214085 (N.D. Cal. Nov. 16, 2020),
21    the plaintiffs alleged that the defendant misled them about the capabilities of one of its
22    smartphones, the iPhone XR.  The defendant argued that the plaintiffs did not have standing to
23    seek injunctive relief because none had alleged an intent to purchase another iPhone XR in the
24    future. Judge Orrick agreed: "[N]one of them has alleged (in the FAC) a desire to purchase the
25    iPhone XR in the future.  None of them has alleged a desire to purchase another smartphone
26    instead of the iPhone XR in the future." *Id.* at *21.  Judge Orrick then noted: "*And* none of them
27    has alleged that such a desire *has any imminence*." *Id.* (emphasis added).  In *Nelson v. Seaworld*
28    *Parks & Entertainment, Inc.*, No. 15-cv-02172-JSW, 2020 U.S. Dist. LEXIS 189438 (N.D. Cal.

United States District Court
Northern District of California

Oct. 13, 2020), Judge White was even more explicit. The plaintiffs had filed suit against the defendant, claiming that the defendant had made misrepresentations about captive orcas and/or the defendant's treatment of captive orcas. In bench trial conclusions and findings, Judge White noted that, to have standing for injunctive relief, "a plaintiff must prove they want to or intend to purchase the product in the future." *Id.* at *37. Here, the plaintiffs did not provide testimony "suggest[ing] they regularly were confronted with Seaworld's allegedly false statements, which . . . differentiates them from the plaintiff in *Davidson*, who alleged she 'regularly visit[ed] stores that' sold the defendant's wipes and, thus, was regularly confronted with the alleged false advertising and could not determine if the wipes were truly flushable from the packaging." *Id.* at *38.

The Court finds the analysis in *Anderson* and *Nelson* persuasive. The plaintiff in *Davidson* had alleged it was likely that she would be making a decision to purchase in the *near* future given her regular visiting of stores that sold the wipes. Moreover, the Supreme Court has underscored that "some day" intentions for the future are not sufficient to establish standing. In *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), where the Supreme Court noted as follows with regard to whether an environmental organization had standing to challenge a federal regulation:

> [The] profession [made by members of the organization in affidavits] of an "intent" to return to the places they had visited before – where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species – is simply not enough. Such "some day" intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the "actual or imminent" injury that our cases require.

*Id.* at 564; *cf. Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("[p]ast wrongs were evidence bearing on 'whether there is a real and immediate threat of repeated injury' [b]ut the prospect of future injury rested 'on the likelihood that [plaintiffs] will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners'").[2]

---

[2] At the hearing, Plaintiffs directed the Court to *In re Coca-Cola Prods. Mktg. & Sales Practices Litigation*, No. 14-md-02555-JSW, 2020 U.S. Dist. LEXIS 26261 (N.D. Cal. Feb. 14, 2020), and

13

1          Accordingly, the Court concludes that, based on the current allegations in the pleading,

2  Plaintiffs have failed to establish standing to seek injunctive relief. Plaintiffs' conclusory

3  allegation that they intend to purchase a TTE television without any factual allegations to suggest

4  a purchase in the relatively near or forseeable future is not sufficient, at least in the context where,

5  as here, the goods are not, *e.g.*, consumable items that are bought on a repeat basis as in *Davidson*,

6  but rather a durable good not typically purchased on a regular basis. The Court, however, shall

7  have Plaintiffs one final opportunity to cure this deficiency, if they can do so in good faith. *See*

8  Fed. R. Civ. P. 11.

9  C.    Restitution

10         In its order granting (in part) TTE's motion to dismiss the FAC, the Court noted that

11  Plaintiffs sought equitable relief and that equitable relief can come in different forms such as

12  injunctive relief and restitution. To the extent Plaintiffs sought restitution as an equitable remedy

13  – whether for their § 17200, § 17500, CLRA, California unjust enrichment, or New Jersey unjust

14  enrichment claims – the Court held that Plaintiffs had failed to allege an inadequate remedy at law.

15  *See, e.g.*, Docket No. 61 (Order at 7) (noting that, "on the face of the complaint, it appears that

16  what Plaintiffs[] claim for damages and restitution are not really different" – *e.g.*, to the extent

17  Plaintiffs alleged that they would have paid less for the televisions had they known the truth, that

18  measure could be obtained as restitution because, in a mislabeling case, the measure of restitution

19  is the amount necessary to compensate the purchaser for the difference between a product as

20  labeled and the product as received). The Court therefore dismissed the claims to the extent they

21  sought restitution as relief. The dismissal, however, was without prejudice so that, if Plaintiffs

22  were to uncover during discovery a basis for claiming that legal remedies did not provide for

23  adequate relief, they could seek leave to amend.

24         In the pending motion, TTE contends that Plaintiffs failed to hew to the Court's order

25  because they continue to seek restitution as a remedy – specifically, for the § 17200, § 17500,

26  California unjust enrichment, and New Jersey unjust enrichment claims.

---

*Kwan v. SanMedica*, 854 F.3d 1088 (9th Cir. 2017). Neither case, however, addresses the specific issue above.

14

1. Claims Under §§ 17200 and 17500

For the § 17200 and § 17500 claims, Plaintiffs formally eliminated references to the term "restitution." However, they continue to seek restitution as evidenced by the following allegations:

- § 17200 claim: "Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin [TTE] from continuing its unfair, unlawful and/or deceptive practices, *and to restore to Plaintiffs and the California Class the monies that [TTE] acquired by means of such unfair competition*." SAC ¶ 98 (emphasis added).
- § 17500 claim: The same basic allegation above is repeated in ¶ 106 of the SAC.

In their papers, Plaintiffs offered no real defense for continuing to seek restitution for the § 17200 and § 17500 claims. At the hearing, however, Plaintiffs explained that they were simply including the allegations to preserve their rights on appeal. In light of this representation, the Court deems this part of TTE's motion to dismiss moot. The Court adheres to its prior ruling on requests for restitution; that is, the requests for restitution are dismissed without prejudice, but without, at this point, leave to amend.

2. California and New Jersey Unjust Enrichment Claims

Similar to above, for the two unjust enrichment claims, Plaintiffs have formally eliminated references to "restitution." But they still seem to seek restitution based on the following allegations:

- California unjust enrichment claim: "[TTE] has unjustly retained profits and should be required to make Plaintiffs whole." SAC ¶ 130.
- New Jersey unjust enrichment claim: The same basic allegation as above is repeated in ¶ 147 of the SAC.

Moreover, Plaintiffs' inclusion of the unjust enrichment claims is problematic because the Court dismissed the claims in their entirety (without prejudice but without specific leave to amend

15

either) because the only relief being sought for the claims was restitution.[3]

Here, unlike the above, Plaintiffs have presented an argument as to why they have included the unjust enrichment claims in the SAC, in spite of the Court's prior order. Essentially, Plaintiffs argue that their unjust enrichment claims should be considered actions at law (not in equity) for which they seek a legal remedy (not an equitable remedy).

Arguably, the Court should reject Plaintiffs' argument outright because (1) Plaintiffs are essentially asking the Court to reconsider its prior ruling and (2) under the Civil Local Rules, reconsideration is not permitted if a party did not make the argument in its prior briefing. *See* Civ. L.R. 7-9(b)(3) (providing that a party moving for leave to file a motion to reconsider must show "[a] manifest failure by the Court to consider material facts or dispositive legal arguments *which were presented to the Court before [its] interlocutory order*") (emphasis added). Plaintiffs could have made their argument in their earlier briefing because (1) TTE's argument that equitable relief in the form of restitution is improper if there is an adequate remedy at law was based on *Sonner v. Premier Nutrition Corp.*, 962 F.3d 1072 (9th Cir. 2020), and (2) in *Sonner*, the Ninth Circuit expressly noted that there is a distinction between "restitution at law" and "restitution in equity." *See id.* at 1076 n.2 (citing to *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002), for making this distinction).

But even if the Court were to address Plaintiffs' argument on the merits, they would fare no better. Plaintiffs are correct that, in *Great-West*, the Supreme Court recognized restitution can lie in equity at times and at law in others: "not all relief falling under the rubric of restitution is available in equity. In the days of the divided bench, restitution was available in certain cases at law, and in certain others in equity." *Great-W.*, 534 U.S. at 212. The Supreme Court added:

> In cases in which the plaintiff "could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him," the plaintiff had a right to restitution at law through an action derived from the common law writ of assumpsit. In such cases, the plaintiff's claim was considered legal because he sought "to obtain a judgment

---

[3] In contrast, Plaintiffs had asked for both restitution and injunctive relief for the § 17200 and § 17500 claims.

16

> imposing a merely personal liability upon the defendant to pay a sum of money." Such claims were viewed essentially as actions at law for breach of contract (whether the contract was actual or implied).
>
> In contrast, a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]." Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

*Id.* at 213-14.

But New Jersey law still considers restitution for unjust enrichment as an equitable remedy. *See Nat'l Amusements, Inc. v. N.J. Tpk. Auth.*, 261 N.J. Super. 468, 478 (1992) ("Assuming, arguendo, that plaintiff could prove a substantive claim of unjust enrichment, plaintiff would still not recover under a theory of quasi-contractual liability. Restitution for unjust enrichment is an equitable remedy, available only when there is no adequate remedy at law.").

As for California law, Plaintiffs are correct that there are cases indicating that (1) claims for assumpsit or quasi-contract are essentially viewed as claims predicated on an unjust enrichment theory, *see Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2018 U.S. Dist. LEXIS 149404, at *28 (N.D. Cal. Aug. 31, 2018) (stating that "[t]he Ninth Circuit in *Astiana* confirmed that [w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution") (internal quotation marks omitted); *Philpott v. Superior Court*, 1 Cal. 2d 512, 518 (1934) (stating that an action in assumpsit is designed to prevent unjust enrichment of a defendant from the property of a plaintiff), and that (2) these claims are considered claims at law rather than claims in equity. *See id.* at 522 (stating that such a claim is one at law, even though the plaintiff's right to recover is governed by equitable principles). But as indicated above, in *Philpott*, the California Supreme Court stated that, although the claim is a

17

legal one brought before a court at law, *equitable principles still govern* – this would suggest that a plaintiff would still have to show an inadequate remedy at law. Here, Plaintiffs have still failed to articulate (even when expressly asked at the hearing) a difference between what they could obtain as damages and as "restitution."

Accordingly, the Court dismisses both the New Jersey and California unjust enrichment claims. The Court, however, adheres to its prior ruling that the dismissal of the claims is without prejudice, such that, should Plaintiffs discover, in the future, a basis for arguing that there is a difference between damages and restitution, they may seek leave to amend.

### III. CONCLUSION

For the foregoing reasons, TTE's motion to dismiss is granted.

- The request for injunctive relief is dismissed but with leave to amend. Plaintiffs must file their amended complaint within **three weeks** of the date of this order. TTE shall then have **three weeks** to respond to the amendment.
- The claims for unjust enrichment are dismissed. The dismissal is without prejudice.

This order disposes of Docket No. 66.

**IT IS SO ORDERED**.

Dated: March 3, 2021

_____
EDWARD M. CHEN
United States District Judge